**Robinson NORRIS, Jr., Appellant,**

v.

**Patricia NORRIS, Appellee.**

**No. 08–99–00396–CV.**

Court of Appeals of Texas, El Paso.

Sept. 13, 2001.

Rehearing Overruled Oct. 10, 2001.

Robin Norris, El Paso, for appellant.

Thomas S. Hughes, El Paso, for appellee.

Before LARSEN, McCLURE, and CHEW, JJ.

### OPINION

McCLURE, Justice.

This is an appeal from a modification order in a suit affecting the parent-child relationship. The associate judge recommended an increase in both child support and visitation.[1] The district court entered an order in conformity with this recommendation. On appeal, Robinson Norris, Jr. (Robin) challenges the increase in child support, the court's failure to decrease the support, the court's finding that it was not in the children's best interest to implement a 50–50 division of periods of possession, and the court's order that he pay Patricia Martinez's[2] (Patricia) attorney's fees. Finding no error, we affirm.

### PROCEDURAL HISTORY

Patricia and Robin were divorced on October 24, 1997, pursuant to an agreed decree. Seven months later, Patricia filed a motion requesting an increase in child support. Pertinent to this appeal, Robin filed a cross-motion seeking a decrease in payments and an increase in his periods of possession.[3] The trial court entered the following pertinent findings of fact:

- Robin's net resources for 1997 were $5,228.27 per month.

---

1. As Robin correctly points out, the Family Code does not utilize the word "visitation." Despite that reality, cases which discuss possession of children generally speak in terms of visitation. When asked about the current order of "standard visitation" Robin pointedly testified that he doesn't refer to it as visitation and that he would object to having it referred to as visitation, preferring the reference to be "possession and access." Later, he offered his reasoning for the objection: "I don't want my children visiting with me. I want them living with me. I'm their parent." We agree with his philosophy and adopt his preference throughout the remainder of this opinion.

2. The decree ordered that Patricia's name be changed to Patricia Jean Martinez, her maiden name.

3. Robin also sought child support from Patricia in the event the court ordered a 50–50 division of the parties' periods of possession as well as a motion for enforcement, via contempt, for Patricia's violation of a provision in the decree requiring her to pay outstanding

- The percentage applied to his net resources for child support is 25 percent.
- Child support based on the guidelines would be $1,307.07 per month for 1997.
- Robin's net resources for 1998 were $2,736.21 per month.
- Child support based on the guidelines would be $684.05 per month for 1998.
- Robin's estimate of his gross income for 1999 is $60,000.
- An average gross income over the past two years is $5,741.84 per month yielding net resources of $3,982.11 per month.
- Application of the child support guidelines to $3,982.11 yields $995 per month.

The court ordered Robin to pay Patricia $995 per month, retroactively beginning June 1, 1998. This resulted in an arrearage of $1,740 which Robin was required to pay over a 17 month period.

While the trial court did increase Robin's periods of possession, it found that granting him possession fifty percent of the time as he had requested was not in the children's best interest. The order was modified to include (1) an earlier starting time on Fridays; (2) a later return time on Mondays; and (3) an overnight on Wednesdays, with the Wednesday overnights extending through the summer months, except for Patricia's periods of uninterrupted summer possession. The court also ordered Robin to pay Patricia's attorney's fees in the amount of $1,500.

## FACTUAL SUMMARY

At the time of the divorce, Patricia received community property totaling

$30,000. Within a short time, she had spent all but $2,000 on certain debts, monies owed her parents, attorney's fees, and expenses she incurred for the children. Her current income is approximately $400 a month, she is living in a home provided by her parents, and she owns restaurant equipment valued at roughly $10,000. Patricia prefers not to sell the equipment, representing the remaining assets of her former business, Café Society, because she wants to open another restaurant. She presented no evidence regarding the children's needs or expenses.

Robin is an attorney. For more than ten years, he was employed as a staff attorney by the Texas Court of Criminal Appeals in Austin. He left his position at the court in early December 1996 and ultimately formed a partnership with John Gary Hart. Hart maintains the Austin office; Robin has an office in both El Paso and Austin. His practice now consists primarily of representing criminal defendants in post-death penalty matters.

Pursuant to the terms of the decree, Robin agreed to pay Patricia $850 in monthly child support based on monthly net resources of $3,400.[4] Both Patricia and Robin sought modification of child support. Robin additionally pursued a modification of his periods of possession, requesting that the children be allowed to live with him every other week.

## STANDARD OF REVIEW

In his first two issues for review, Robin complains that the trial court abused its

loans relative to her former restaurant, Café Society.

4. The decree specifically provides: "IT IS ORDERED AND DECREED that ROBINSON NORRIS, JR. is obligated to pay and, subject to the provisions for withholding from earnings for child support specified below, shall pay to PATRICIA NORRIS child support of $850.00 per month (based on net resources of $3,400.00 per month), with the first payment being due and payable on October 1, 1997, . . . ."

discretion when it ordered an *increase* in child support because there was legally and factually insufficient evidence to support it. In his next two issues, he contends the court abused its discretion when it failed to order a *decrease* in child support because he established his entitlement as a matter of law, or at the very least, the court's failure to reduce support was against the great weight and preponderance of the evidence. Where these two standards of review overlap, as they frequently do in family law cases, we employ a hybrid analysis.

### *Traditional Sufficiency Review*

In considering a legal sufficiency or "no evidence" point, an appellate court considers only the evidence which tends to support the jury's findings and disregards all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 83 (Tex.App.—El Paso 1992, no writ). If any probative evidence supports the jury's determination, it must be upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). However, a factual sufficiency point requires examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 244 S.W.2d at 660; *Lindsey v. Lindsey*, 965 S.W.2d 589, 591 (Tex.App.—El Paso 1998, no pet.). In an appeal from a bench trial, findings of fact are the equivalent of jury answers to special issues. *Id.* at 591. The reviewing court cannot substitute its conclusions for those of the trial court if there is sufficient competent evidence of probative force to support the trial court's findings. *Id.*

### *Abuse of Discretion Standard*

The term "abuse of discretion" is not susceptible to rigid definition. *Lan-*

*don v. Jean Paul Budinger, Inc.*, 724 S.W.2d 931, 934 (Tex.App.—Austin 1987, no writ). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986), *citing Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.Comm.App.—1939, opinion adopted). Stated differently, the appropriate inquiry is whether the ruling was arbitrary or unreasonable. *Smithson v. Cessna Aircraft Company*, 665 S.W.2d 439, 443 (Tex.1984); *Landry v. Travelers Insurance Co.*, 458 S.W.2d 649, 651 (Tex. 1970). The mere fact that a trial judge may decide a matter within her discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Southwestern Bell Telephone Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex.1965); *Jones v. Strayhorn*, 159 Tex. 421, 321 S.W.2d 290, 295 (1959).

### *Which Standard Do We Apply?*

Orders concerning child support and periods of possession will not be disturbed on appeal unless the complaining party can demonstrate a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990)(applying abuse of discretion standard with regard to child support order); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982)(applying abuse of discretion standard with regard to possession order). The question of conservatorship of a child is addressed to the sound discretion of the trial court when it sits as trier of fact. *Jeffers v. Wallace*, 615 S.W.2d 252, 253 (Tex.Civ.App.—Dallas

1981, no writ). The trial court is in the best position to observe the demeanor and personalities of the witnesses and can "feel" the forces, powers, and influences that cannot be discerned by merely reading the record. *Id.* Thus, an abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Valdez v. Valdez,* 930 S.W.2d 725, 731 (Tex.App.—Houston [1st Dist.] 1996, no writ).

### Overlapping Standards in the Family Law Context

An appeal directed toward demonstrating an abuse of discretion is one of the tougher appellate propositions. Most of the appealable issues in a family law case are evaluated against an abuse of discretion standard, be it the issue of property division incident to divorce or partition, conservatorship, possession and access, or child support. In some instances, the abuse of discretion standard overlaps the traditional sufficiency review. Several courts have concluded that when the trial court's ruling on the merits is reviewed under an abuse of discretion standard, the normal sufficiency of the evidence review is part of the abuse of discretion review and not an independent ground for reversal. *Crawford v. Hope,* 898 S.W.2d 937, 940–41 (Tex.App.—Amarillo 1995, writ denied)(when standard of review is abuse of discretion, factual and legal sufficiency are not independent grounds of error); *accord, Thomas v. Thomas,* 895 S.W.2d 895, 898 (Tex.App.—Waco 1995, writ denied); *In the Matter of the Marriage of Driver,* 895 S.W.2d 875, 877 (Tex.App.—Texarkana 1995, no writ); *Wood v. O'Donnell,* 894 S.W.2d 555, 556 (Tex.App.—Fort Worth 1995, no writ); *In the Interest of Pecht,* 874 S.W.2d 797, 800 (Tex.App.—Texarkana 1994, no writ); *but see Matthiessen v. Schaefer,* 897 S.W.2d 825, 828 (Tex.App.—

San Antonio 1994)(Duncan, J., dissenting), *rev'd on other grounds,* 915 S.W.2d 479 (Tex.1995)(appellate court should review award of attorney's fees by normal sufficiency of evidence standard, and not subsume sufficiency of evidence into abuse of discretion standard).

We have previously agreed with Justice Duncan's dissenting opinion in *Matthiessen.* In *Lindsey,* we addressed the conflict between the traditional sufficiency review and the abuse of discretion standard in the context of a child support modification and concluded that once it has been determined that the abuse of discretion standard applies, an appellate court should engage in a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion? *Lindsey,* 965 S.W.2d at 592. The traditional sufficiency review comes into play with regard to the first question; however, our inquiry cannot end there. *Id.* We must proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.* Stated inversely, we must conclude that the trial court's decision was neither arbitrary nor unreasonable. *Id.; see also, Jenkins v. Jenkins,* 16 S.W.3d 473, 477–78 (Tex.App.—El Paso 2000, no pet.); *In the Interest of De La Pena,* 999 S.W.2d 521 (Tex.App.—El Paso 1999, no pet.).

In the child support context, an appellant may challenge the sufficiency of the evidence to support a finding of net resources, a finding of the proven needs of the child, a finding of voluntary unemployment or under-employment, or a finding of a material and substantial change in circumstances. With regard to possession, an appellant may challenge the sufficiency of the evidence to support a finding that the age, developmental status, circumstances, needs, or best interest of the child

justify the variance; a finding that the circumstances of the parents justify a variance; or a finding of a material and substantial change in circumstances. Once the appellate court determines sufficient evidence exists, it must then decide whether the trial court appropriately exercised its discretion in either applying the statutory guidelines or deviating therefrom. Robin has appropriately raised both prongs of this inquiry.

## CHILD SUPPORT

Robin argues that the decrease in Patricia's net resources between October 1997 and February 1999 does not represent a change in her circumstances requiring *increased* child support. He further suggests that the amount of support he paid in 1997 was in substantial compliance with the statutory guidelines and the amount he paid in 1998 substantially exceeded them. Moreover, the decrease in his net resources in1998 represents a change in his circumstances justifying a *decrease* in child support. Lastly, Robin contends the court erred in considering, over his objection, evidence of income he earned in 1997 prior to the entry of the decree in October of that year. Patricia counters that her circumstances have materially and substantially changed, and that the existing support order is not in substantial compliance with the guidelines.

### *Was a Modification Justified?*

As we have indicated, the $850 monthly child support Robin agreed to pay at the time of divorce was based upon monthly net resources of $3,400. To prevail on her motion to increase child support, Patricia must establish that there has been a material and substantial change in either the children's circumstances or the circumstances of a person affected by the prior order since the time the order was

rendered. TEX.FAM.CODE ANN. § 156.401 (Vernon Supp.2001); *Hollifield v. Hollifield*, 925 S.W.2d 153, 155 (Tex.App.—Austin 1996, no writ); *Clark v. Jamison*, 874 S.W.2d 312, 317 (Tex.App.—Houston [14th Dist.] 1994, no writ). A child support order that is not in compliance with the guidelines does not in and of itself establish a material and substantial change in circumstances. *In the Interest of G.J.S.*, 940 S.W.2d 289, 294 (Tex.App.—San Antonio 1997, no writ); *Cole v. Cole*, 882 S.W.2d 90, 92 (Tex.App.—Houston [14th Dist.] 1994, writ denied). Nevertheless, a trial court "may consider the child support guidelines ... to determine whether there has been a material or substantial change of circumstances ... that warrants a modification...." TEX.FAM.CODE ANN. § 156.402(a). If the amount of support contained in the prior order "does not substantially conform with the guidelines, ... the court may modify the order to substantially conform with the guidelines if the modification is in the best interest of the child." TEX.FAM.CODE ANN. § 156.402(b).

Because Patricia offered no evidence that the children's circumstances had changed, we consider whether hers or Robin's had. The evidence reveals that at the time of the divorce, Patricia had at least $30,000 in assets excluding the used restaurant equipment. Funds available to her for the children's support were reduced by $28,000 from the time of the original decree to the time of the hearing below. Her income had increased from zero to $400 per month.

Robin testified that his income from the Court of Criminal Appeals during the 1996 calendar year was "about $50,000." When he and Patricia divorced in October 1997, he had been engaged in the private practice of law for some ten months. He contended that the child support order con-

tained within the decree was premised upon a gross annual salary of $60,000 and monthly net resources of $3,400. His precise words were:

> It was my understanding, if you want to cut to the chase, that when I—when I agreed to the order of child support of $850, that the net resources of $3,400 a month represented an approximate gross annual income of $60,000.

He had "no idea" how Patricia's former lawyer arrived at the $3,400 figure mentioned in the decree. "He proposed it by sending me a draft proposed agreed order. And I examined it, and it was satisfactory to me...." When the trial court ruled that he must divulge his gross income for 1997,[5] he admitted that during the seven month period between January 1 and August 26 of that year, the Court of Criminal Appeals paid him $142,278.11 to represent inmates on death row in post-conviction applications for writs of habeas corpus, although that figure included fees for forensic experts and investigators. His 1997 federal income tax return revealed that his gross income for 1997 was $94,498.45 and his adjusted gross income was $89,187.60, resulting in net resources of $5,228 per month within the meaning of the Texas Family Code. TEX.FAM.CODE ANN. § 154.062 (Vernon 1996). Robin had not yet filed his 1998 return, but he did provide 1099 forms and other tax information for 1998. Based upon these documents, he calculated his 1998 income at approximately $44,000, with monthly net resources of $2,736. TEX.FAM.CODE ANN. § 154.062. Robin was unable to confidently estimate his 1999 gross income, but he hoped it would be at least $60,000.

When Patricia's counsel inquired whether the net resources of $3,400 referenced in the decree "wasn't close" to what his monthly net resources were at the time of divorce, Robin answered:

> Well, actually, for the month of October of 1997, and for each of the following months in 1997, it wasn't close, because I didn't have any income.

Robin maintained that all information about his income at the time of divorce was either furnished to Patricia or available for her review and if the case had been settled before her prior attorney obtained adequate discovery, "why, that's just too bad."

■ This court has previously determined that while it would be preferable for a trial court to find specific sums for net resources in the normal wage earner's or salaried person's case, where a person's income and net resources vary a great deal from month to month, it may only be possible to state a range of net resources. *Ikard v. Ikard,* 819 S.W.2d 644, 649 (Tex. App.—El Paso 1991, no writ).[6] This is not prohibited provided the range is supported by the evidence. *Id.* The best interest of the child is the primary consideration in determining questions of child support. *Hollifield,* 925 S.W.2d at 155; *MacCallum v. MacCallum,* 801 S.W.2d 579, 583 (Tex. App.—Corpus Christi 1990, writ denied). Consequently, the court retains broad discretion in determining whether to modify a prior support order.

More recently, the Texarkana court has addressed the issue of a fluctuation in income. *In re Marriage of Bertram,* 981 S.W.2d 820 (Tex.App.—Texarkana 1998,

---

**5.** When Robin refused to furnish his 1997 tax return during discovery, Patricia's counsel obtained information concerning monies paid to him by the Court of Criminal Appeals from the State of Texas through the Freedom of Information Act.

**6.** Mr. Ikard was also an attorney whose monthly income fluctuated between $14,000 and $20,000.

no pet.). Mr. Bertram was employed by an automobile dealership. When the trial began on November 26, 1996, he testified that he earned approximately $2,080 each month. Pursuant to the guidelines, his child support obligation for two children would be $426.55, and indeed, $426 was the amount of support he had been paying under the temporary orders. The trial was recessed to allow the parties to attend a marriage seminar with the hope that reconciliation might be possible. When the trial reconvened on March 16, 1997, Mr. Bertram testified that his job title had changed and that his method of compensation had changed from salary to commission. He now drew $350 per week against a quarterly commission check and pay stubs were introduced revealing gross monthly income of $1,800; appropriate calculations demonstrated that his monthly net resources were $1,474.17. Based on this sum, his child support obligation would total $369. At the conclusion of the trial, the court ordered child support of $426 per month.

Mr. Bertram appealed, complaining that the trial court had predicated the support order on his former income rather than his income at the time of the final order. His wife countered that because he could not give a set figure for compensation since he had only worked on a commission basis for five weeks, the trial court had not abused its discretion in establishing permanent support based on his former salary. The appellate court noted that although the trial judge apparently accepted that there had been a salary change, the judge was not compelled to accept Mr. Bertram's opinion as to his projected annual income because of the short interval for calculating income based on commission. *In re Marriage of Bertram,* 981 S.W.2d at 828. It then concluded:

> Because of the nature of commissions, as opposed to a set income, the trial court

had a right to conclude that this short work interval paid on a commission basis did not establish any degree of certainty as to [Mr. Bertram']s income and, therefore, determine that this amount was too speculative for the setting of child support. The trial court has discretion to reach such a conclusion even in face of the argument that the other income is no longer the current income.

*Id.* at 828. We recognize that Mr. Bertram was appealing a child support order entered incident to divorce rather than appealing from an order increasing support. Nevertheless, we interpret the court's holding to be that a trial court must have the discretion to fashion a child support order based on the peculiarities of the income at issue. The trial court in *Bertram* opted for "former certain income" rather than "current uncertain income." The trial court in *Ikard* solved the problem by stating a range of net monthly resources. In this case, the court below chose to average the gross monthly resources for 1997 [$7,817] with the gross monthly resources for 1998 [$3,666.67] to reach an average gross monthly income of $5,741.84. She then calculated monthly net resources of $3,982.11, applied the statutory guidelines, and arrived at child support in the amount of $995 per month.

■ Robin does not specifically complain of any factual finding. In his brief, he notes he "does not dispute that the amount of his net resources for the years 1997 and 1998 were as found by the court." Instead he objects to the "averaging" we have just outlined and contends that the evidence of a decrease in his net resources between October 1997 and 1999 does not represent a change in circumstances requiring an increase in support. We believe that the methodology employed by the trial court was justifiable and within her discretion. Because Robin concedes

the evidence supports the findings of fact, we conclude that the trial court was neither arbitrary nor unreasonable in modifying the support order. Given the fluctuation in Robin's income, an order based upon the average amount of monthly net resources for the years 1997 and 1998 was not an abuse of discretion.

■■■ Robin next contends that because his trial testimony was neither inconsistent nor evasive, there was simply no reasonable basis for disbelieving it and that the uncontradicted testimony of a party concerning relevant facts may not be disregarded by the trial court. We disagree. We have already remarked that in *Bertram,* the trial court was found to have the discretion to disbelieve Mr. Bertram's testimony and estimates of future income. One of the Houston courts has recently reiterated that a court is not required to accept all of a litigant's evidence of his income and net resources as true. *Friermood v. Friermood,* 25 S.W.3d 758, 760 (Tex.App.—Houston [14th Dist.] 2000, no pet.), *citing Glassman & Glassman v. Somoza,* 694 S.W.2d 174, 176 (Tex.App.— Houston [14th Dist.] 1985, no writ). In *Friermood,* the court emphasized that most of the evidence presented by Mr. Friermood with regard to business deductions from his gross receipts was provided without verifiable supporting documentation. *Id.* Other evidence was inconsistent or difficult to reconcile, such as where his interrogatory answers during the divorce proceeding did not comport with the evidence he offered at trial. *Id.* Here, Robin presented computer generated registers of his business accounts which, in his own words, were both a check register and "something that I can go back and change." Patricia contended they were subject to alteration and complained that he had no cancelled checks as back up documentation. Robin contended that the registers were reconcilable to documents from the bank such that any alterations would clearly show they were no longer reconcilable. We will address one purported manipulation in particular. Robin maintained that $62,369.94 paid to his law partner on March 2, 1998, from the business savings account was a "draw:"

> That draw followed immediately upon a transfer of the exact same amount from our savings account to our checking account, as indicated on the immediately previous line item. And that was a sum of money belonging to [his partner] from income in the previous year, which he removed from the business accounts on that date, to invest or whatever he did with his personal money.

Patricia contended the draw "almost exactly miraculously coincide[d]" with the day Robin learned that Patricia was making inquiries into his income for purposes of establishing whether child support was set in a proper amount. We detail here the evidence Patricia claimed demonstrated an accounting manipulation:

Q: What we have here, that you have provided pursuant to discovery requests, is your computer—

A: My printer printed that out when I commanded my computer to tell it to do so.

Q: And who put the input into your computer, Mr. Norris?

A: I put it in, every character.

Q. Mr. Norris, how do I or Judge Anderson know that the $62,000 that went in there that you gave to Mr. Hart was all his money?

A. Because it's my testimony that it was.

Q. Okay.

A. Because these business records reflect that it was.

Q: This is a business record?

A. Yes, it is.

Q. Or is this something you printed up off of your computer, Mr. Norris?

A. This is a business record, and it is something I printed off of my computer.

Q. Because of the peculiar way your checkbook works, Mr. Norris, I don't have a copy of the check, pursuant to my discovery requests, made out to Mr. Hart for $62,000, do I?

A. Neither do I.

Because the trier of fact was in a better position to determine the candor, demeanor, and credibility of the witnesses, we will not substitute our conclusions for hers. And because there is sufficient evidence to support her factual findings, we find no abuse of discretion. Points of Error Nos. One through Four are overruled. The last issue pertaining to child support addresses the admissibility of the 1997 federal income tax return, the sole source of information concerning Robin's income before the date of divorce.

### Admission of the 1997 Federal Income Tax Return

Although Robin concedes that his actual net resources for 1997 were $5,228.27, just as the trial court found, he contends the trial court erred in admitting evidence of income earned before the date of divorce. He maintains that it was not relevant to any issue before the court because the only relevant information pertained to what his income has actually been since the date of divorce. We review a trial court's evidentiary rulings under an abuse of discretion standard. *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35 (Tex.1998); *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995).

We find some guidance in *McGuire v. McGuire,* 4 S.W.3d 382 (Tex.App.—Houston [1st Dist.] 1999, no pet.). In 1992, the McGuires entered into an agreement incident to divorce (AID) by which Mr. McGuire was to pay child support of $800 per month; he was also to receive the federal income tax exemptions for all three children. The divorce was granted on February 23, 1993, some seven months later, and it incorporated the child support provisions of the AID. Mr. McGuire stopped paying child support in 1996 and in 1997, he was held in contempt and ordered to pay the arrearages. A few short weeks later, Mr. McGuire filed a motion to modify, seeking a reduction in his support obligations. The trial court reduced the support from $800 to $288 and apportioned the tax exemptions between the parties. On appeal, Mrs. McGuire contended that the trial court should have excluded Mr. McGuire's 1992 federal income tax return because it predated the 1993 divorce decree. Because the 1992 return provided information pertaining to income Mr. McGuire received from January 1 through December 31 of 1992, less than two months before the divorce decree was rendered, no evidentiary error was committed. *Id.* at 386. And because the record contained financial information for 1992, 1995, 1996, and 1997 reflecting a material and substantial change in circumstances, the reduction did not constitute an abuse of discretion. From this opinion, we can discern that the passage of time between January 1, 1993, and February 23, 1993, was insignificant. The 1992 return was relevant to a determination of the true financial picture in which Mr. McGuire was situated at the time of divorce. Indeed, one may logically conclude that the financial circumstances at the time of divorce were more accurately portrayed by the return representing income received two

months earlier than by the return representing income ten months later.

Robin appears to take the position that we cannot consider anything other than what he was earning at the time of divorce as captured by the snapshot language in the decree pinpointing net resources at $3,400. Although he does not articulate it in so many words, such an argument indirectly suggests that the decree is *res judicata* as to his income at divorce. Robin did not plead the affirmative defense of *res judicata*, nor did he object in the trial court on that basis. Consequently, he has waived the argument and we do not address it here. *In the Interest of Striegler*, 915 S.W.2d 629, 640 (Tex.App.—Amarillo 1996, pet. denied); Tex.R.Civ.P. 94. Instead, we consider only whether the trial court acted without regard to guiding rules and principles, or whether her decision to consider Robin's income for the entire year of divorce was arbitrary and unreasonable. Remembering that Robin testified that he had no income for the months of October, November, and December 1997, we conclude that a logical method of pinpointing his net resources at divorce is to consider the financial picture over the course of the year. Indeed, that is the thrust of the *Ikard* and *Bertram* opinions. Point of Error No. Five is overruled.

## ACCESS TO AND POSSESSION OF CHILDREN

In Point of Error No. Six, Robin argues that the trial court abused her discretion by finding that his proposed possession schedule was not in the children's best interest. He emphasizes that Texas law favors the appointment of both parents as joint managing conservators and it is presumed that such appointment is in the best interest of the children. *See* Tex.Fam.Code Ann. § 153.131. He contends that we should also consider the public policy principles which promote a full and lasting relationship between parents and their children. He also suggests the court has an obligation to protect his parental position vis-a-vis Patricia's efforts to usurp or destroy it. Although public policy may encourage a strong relationship between children and both parents, it does not mandate that children live fifty percent of the time with each parent; to the contrary, Section 153.135, entitled "Equal Possession Not Required," provides:

> Joint managing conservatorship does not require the award of equal or nearly equal periods of physical possession of and access to the child to each of the joint conservators.

Tex.Fam.Code Ann. § 153.135.

■ Robin argues that the evidence adduced at the modification hearing is factually insufficient to support the trial court's conclusion that there has been no material or substantial change in circumstances relevant to the issue of possession. He misstates the court's findings. The court impliedly found[7] that Robin's cir-

---

7. When the trial court gives express findings on at least one element of a claim, but omits other elements, implied findings on the omitted unrequested elements are deemed to have been made in support of the judgment. In other words, if a party secures an express finding on at least one element of a claim, then deemed findings arise as to the balance of the elements. *Lindner v. Hill*, 691 S.W.2d 590 (Tex.1985); *Dunn v. Southern Farm Bureau Casualty Insurance Co.*, 991 S.W.2d 467 (Tex.App.—Tyler 1999, pet. denied); *Sears, Roebuck & Co. v. Nichols*, 819 S.W.2d 900 (Tex.App.—Houston [14th Dist.] 1991, writ denied). Where deemed findings arise, it is not an appellee's burden to request further findings or to complain of other findings made. It is the appellant's duty to attack both the express and implied findings. Having found that the modification of Robin's periods of possession was in the best interest of the children, the trial court impliedly found

cumstances had changed or that the current order was unworkable or inappropriate such that an increase in his periods of possession was warranted and further found that it was not in the best interest of the children to order a 50–50 division of periods of possession.

 Joint managing conservators are generally vested with equal rights and responsibilities for the care and support of their children, both in general and during their respective periods of possession. *See generally*, TEX.FAM.CODE ANN. §§ 153.133, 153.134, 153.136. Possession orders may be modified if the circumstances of a person affected by the order have materially and substantially changed, or if the order has become unworkable or inappropriate under existing circumstances. TEX.FAM. CODE ANN. § 156.301(1) and (2). To resolve these issues, the court may refer to the guidelines prescribed by Chapter 153 of the Family Code. TEX.FAM.CODE ANN. § 156.302(a)(Vernon 1996).

Robin testified at some length concerning the material and substantial change in circumstances and the difficulty he encountered in obtaining additional periods of time with his sons, who were thirteen and seven at the time of trial. And he described a conversation in which Patricia "told me herself that she wishes that she didn't have to deal with me at all as a parent of her children, and that if it were possible to eliminate me entirely from their lives, she would do so." He outlined his request that he have his children "for a week at a time every other week, with adjustments to be made for the normal holiday schedule that's in place now." He did not believe that his proposal would be inconvenient or disruptive for the children. He then summarized:

A few other comments that I should make, after proposing this. I don't expect [Patricia] to agree whatsoever to the changes that I request, other than the ones that Mr. Hughes is suggesting, which are that it would somehow be impractical or inconvenient. And it almost astonishes me that a suggestion would be made.

My children spend a great deal of time at a number of different places. They spend—I'm not sure of how much, but they spend a great deal of time every day at [the children's maternal grandparents], which is nearby to where Patricia lives. They spend some time at the homes of their aunts and uncles on a regular basis. They stay overnight regularly at the homes of these people. It isn't as though my children are used to being in one place all of the time.

In fact, I think that's a part of the problem, really. They spend a couple of days here, a couple of days there, and they have no continuity with both of their parents. I certainly have no continuity with them, to have them on a weekend every other weekend, or for a couple of hours on Wednesday. It's just not parenting, Your Honor. It's—what is it? It's visiting. And I don't want my children visiting me.

What I learned is the public policy of this state, as well as the law, as well as the policy of this Court, which sent me to Children Cope with Divorce, we're promoting a parental relationship between both parents and their children. Anybody who has been a parent knows that one can not [sic] discharge parental rights and responsibilities of any meaningful kind under these circumstances. It breaks my heart, it breaks my children's heart. And the order that is in

either that there had been a material and substantial change in circumstances or that

the existing order has become unworkable or inappropriate.

effect right now is impractical under the circumstances, not otherwise.

 Lastly, Robin argues that because Patricia presented no evidence that his possession proposal was not in the best interest of the children, the trial court could not conclude otherwise. First of all, after a careful review, we cannot locate anywhere in the record any testimony by Robin that his proposal would be in the best interest of the children. Certainly, it would be in his own best interest. Second, we have already determined that a trial court is not compelled to believe the uncontroverted testimony of a litigant. Finally, while there is a statutory presumption that the parents be appointed joint managing conservators such that evidence is required to rebut it, there is no presumption that the award of equal periods of possession is in the children's best interest requiring Patricia to offer evidence to rebut it. A comparison of Sections 153.131(b) and 153.135 demonstrates that the legislature knows how to create a presumption and how to prevent the creation of one merely by inference.

Although we commend Robin's commitment and dedication to maintaining a constant presence in the lives of his sons and his efforts to remain an active, involved parent, we find no abuse of discretion in the trial court's denial of Robin's request to have possession of the children every other week. The modification order substantially expanded his possession of the children from the minimum amount agreed upon at the time of the divorce. We would be hard pressed to conclude that the trial court's ruling was made without reference to any guiding rules and principles given a statutory provision expressly mandating that equal possession is not required. Being unpersuaded by Robin's argument, we overrule Point of Error No. Six.

## ATTORNEY'S FEES

In Point of Error No. Seven, Robin alleges the trial court erred in awarding attorney's fees to Patricia because she should not have prevailed on her motion to increase child support. Maintaining that the motion for modification of support was unnecessary, and that Patricia filed the lawsuit frivolously or for the purpose of harassing him, Robin submits that the court is required to tax fees as costs against her. In family law matters, the court has broad discretion in awarding attorney's fees. TEX.FAM.CODE ANN. § 106.002; *Ikard,* 819 S.W.2d at 651–52; *Bruni v. Bruni,* 924 S.W.2d 366, 368 (Tex. 1996). Patricia prevailed on her motion to modify, and Robin's contention that she should have failed in her effort does not compel us to determine that the fee award constitutes an abuse of discretion. He does not challenge the sufficiency of the evidence to support the $1,500 award. Point of Error No. Seven is overruled. Having overruled all issues on appeal, we affirm the judgment of the trial court.