In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00127-CV
______________________________


PETE REED AND WIFE, CARLA REED, Appellants
 
V.
 
PAULETTE WRIGHT, Appellee


                                              

On Appeal from the Fifth Judicial District Court
Bowie County, Texas
Trial Court No. 02C0230-005


                                                 



Before Morriss, C.J., Ross and Cornelius, *JJ.
Opinion by Chief Justice Morriss

______________________________________
*William J. Cornelius, Retired, Chief Justice, Sitting by Assignment


O P I N I O N

            Two roads diverged in the east Texas piney woods. In 1985, one of them, Goff Road, had
been declared public. The other, Cherry Lane,


 the subject of this appeal and formerly the only way
the public could access Goff Road, has now been declared private by the trial court after a nonjury
trial between appellants, Pete and Clara Reed, and appellee, Paulette Wright. The uncontradicted
evidence shows that, though Cherry Lane has not been heavily traveled,


 the public used it for many
years—at least twenty-five years before either party entered the picture. And that makes all the
difference. Because we hold the evidence conclusively proves Cherry Lane was impliedly dedicated,
we reverse the trial court's judgment and render judgment that Cherry Lane is a public road.
            In 1983, Wright purchased a fifteen-acre tract of land from Richard and Mary Couch. Cherry
Lane runs across that tract, along its north edge.


 According to the Reeds and other neighbors,
Cherry Lane had been used by the public since the early 1950s or before, and Bowie County had
maintained and repaired it.
            Later in 1983, Charles R. Goff, an owner of land to Wright's south, sued Wright concerning
a gate she had erected and locked, blocking public access to the road known as Goff Road, which
ran south from the west end of Cherry Lane, across the western edge of Wright's property. Following
a 1985 jury trial, that trial court declared Goff Road public. While the judgment in that suit did not
address whether Cherry Lane was a public road, the only way the public could access Goff Road was
by using Cherry Lane.


 
            In 1999, the Reeds purchased Lots One and Two in Block One of Meadow Brook Heights
Addition—lots which are located on the north side of Cherry Lane at its west end—and built a house
there. Although the Reeds could have used exclusively other roads to access their property, they also
used Cherry Lane for that purpose. When Wright decided to block access to Cherry Lane, this
lawsuit resulted. After a bench trial, the trial court declared Cherry Lane private.
            We reverse the trial court's judgment and render judgment that Cherry Lane is a public road. 
We  reach  that  result  because  we  hold  (1)  implied  dedication  was  properly  at  issue  at  trial,
and (2) implied dedication of Cherry Lane was conclusively proven, due to lack of any evidence to
rebut the presumption of dedication, which presumption arose since conclusively (A) the origin of
Cherry Lane is shrouded in obscurity, and (B) before 1983, the public had made long and continuous
use of Cherry Lane.
1.         Implied Dedication Was Properly at Issue
            Before we discuss the substance of implied dedication, we address a procedural matter. On
appeal, Wright contends the Reeds' pleadings fail to allege implied dedication. The pleadings
alleged that Cherry Lane had been dedicated to public use, but did not specifically plead implied
dedication. The record does not indicate that any special exceptions were made concerning this
issue.
            Pleadings are sufficient if they provide the opponent with fair and adequate notice. Roark
v. Allen, 633 S.W.2d 804, 810 (Tex. 1982); Burke v. Union Pac. Res. Co., 138 S.W.3d 46, 66 (Tex.
App.—Texarkana 2004, pet. filed). Pleadings provide fair and adequate notice if they contain
information sufficient to allow an opposing party to adequately prepare for trial. Roark, 633 S.W.2d
at 810. Further, pleadings are to be liberally construed. Id. The Reeds' pleadings contending the
road had been dedicated were sufficient to raise the issue of implied dedication.
            Even if the pleadings had been insufficient to raise implied dedication, the issue was tried
by consent. "When issues not raised by the pleadings are tried by express or implied consent of the
parties,  they  shall  be  treated  in  all  respects  as  if  they  had  been  raised  in  the  pleadings." 
Tex. R. Civ. P. 67. Trial by consent applies in the exceptional case where it clearly appears from the
record as a whole that the parties tried an unpled issue. Mastin v. Mastin, 70 S.W.3d 148, 154 (Tex.
App.—San Antonio 2001, no pet.); Stephanz v. Laird, 846 S.W.2d 895, 901 (Tex. App.—Houston
[1st Dist.] 1993, writ denied). To determine whether an issue was tried by consent, appellate courts
"must examine the record not for evidence of the issue, but rather for evidence of trial of the issue." 
Mastin, 70 S.W.3d at 154; Libhart v. Copeland, 949 S.W.2d 783, 797 (Tex. App.—Waco 1997, no
writ). Each side submitted a trial brief addressing implied dedication. The trial court addressed
implied dedication in its findings of fact. At a minimum, the parties tried the issue of implied
dedication by consent. Implied dedication was properly at issue. We now turn to the substance of
the implied dedication issue.
2.         Implied Dedication Was Conclusively Proven
            The Reeds assert the evidence conclusively proved implied dedication. We agree, because
we hold there was no evidence to rebut the presumption of dedication which arose from the
conclusive proof that (A) the origin of Cherry Lane was shrouded in obscurity, and (B) before 1983
the public made long and continuous use of Cherry Lane.
            The Reeds appeal from a bench trial. Findings of fact entered in a case tried to the court are
of the same force and dignity as a jury's answers to jury questions. Anderson v. City of Seven Points,
806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for evidentiary
sufficiency by the same standards that are applied in reviewing evidentiary sufficiency to support a
jury verdict. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295,
297 (Tex. 1994).
            When deciding a legal sufficiency point concerning a fact issue, we must consider all the
evidence in the record in the light most favorable to the party in whose favor the verdict has been
rendered, and we must apply every reasonable inference that could be made from the evidence in that
party's favor. Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Pilgrim's
Pride Corp. v. Smoak, 134 S.W.3d 880, 888–89 (Tex. App.—Texarkana 2004, pet. denied). We
disregard all evidence and inferences to the contrary. Burroughs Wellcome Co. v. Crye, 907 S.W.2d
497, 499 (Tex. 1995); Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). A
no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact;
(b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered
to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla;
or (d) the evidence conclusively establishes the opposite of the vital fact. Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998). More than a scintilla of evidence exists if the
evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the
existence of a vital fact. Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex.
2002). 
            The trial court addressed only dedicatory intent


 in finding Cherry Lane had not been
dedicated. But since the trial court addressed that element, any omitted findings will be deemed to
support the judgment if evidence exists to support such findings. See Tex. R. Civ. P. 299; Lindner
v. Hill, 691 S.W.2d 590, 592 (Tex. 1985); Norris v. Norris, 56 S.W.3d 333, 345 (Tex. App.—El
Paso 2001, no pet.).
            Dedication


 is presumed


 when the public engages in long and continuous use of a road
whose origin is "shrouded in obscurity." Graff, 947 S.W.2d at 637; Fazzino, 836 S.W.2d at 274; see
O'Connor, 339 S.W.2d at 882; Supak, 56 S.W.3d at 790.
            Because the evidence conclusively establishes (A) the origin of Cherry Lane is shrouded in
obscurity, and (B) before 1983 the public made long and continuous use of Cherry Lane, a
presumption arose that all elements of proof, essential to establish implied dedication, in fact existed. 
We find no evidence that tended to rebut that presumption.
            A.        Cherry Lane's Origin Is Shrouded in Obscurity
            The origin of Cherry Lane is "shrouded in obscurity," since the record provides no evidence
of the identity and no direct evidence of the intent of the owner who originally established the road. 
Wright contends the presumption of dedication does not apply because William Crain testified he
built the road 1965 when he was leasing the field currently owned by Wright. Although Crain did
state that he "built" the road, he also testified the "old road" had been there when he "built" it in 1965
and that his business had used the road since 1963, two years before he "built" the road. Crain's
father-in-law bought the adjoining Twitty Nursery tract in 1948, and Crain became involved in the
business in 1955. In 1998, Crain sold the Twitty Nursery tract to his son-in-law. Crain testified he
leased the field currently owned by Wright from 1963 until 1977 or 1978. Crain testified as follows:
[Wright's Counsel]: Who built that road?
 
[Crain]: I did.
 
[Wright's Counsel]: When did you build it?
 
[Crain]: When we -- back when we started that farm. The old road was
there, but it wasn't much. And in order to get -- in bad weather . . .
 
[Wright's Counsel]: So at the time you built the road, who owned that dirt on which you were building the road.
 
[Crain]: I don't know.
 
[Wright's Counsel]: And that's what year when you're building that road?
 
[Crain]: It was back in probably '65.

Wright also claimed to have "built" the road. The testimony clearly indicates that Crain did not
originate the road, he only improved it. Further, Cherry Lane appears by name on the plat of
Meadow Brook Heights filed in 1951. The evidence conclusively establishes that the origin of the
road is shrouded in obscurity and there is no evidence of the identity, nor any direct evidence of the
intent, of the property's owner at the time the road was first established.
            B.        There Was Long and Continuous Public Use of Cherry Lane Before 1983
            In addition to the obscurity of the road's origin, the uncontradicted evidence established that
Cherry Lane had been used by the public for a long and continuous period before Wright's 1983
purchase of the property. Crain, Pam McKamie, Tiffin Reed, and Pete Reed testified that they had
been familiar with the area since the late fifties or early sixties and that the public had used the road
since that time. Crain testified the road had been used by members of the public, many of whose
names Crain did not know. Tiffin Reed, Pete Reed's father, testified he had been familiar with the
area since around 1951 and had lived nearby since 1958. Tiffin Reed testified he had used Cherry
Lane since 1958 and had never asked permission to do so. Ms. Goff stated in her deposition, which
was introduced at trial, that there had never been a dispute concerning whether Cherry Lane was a
public road and that they never requested permission to use it. According to McKamie, the daughter
of the Goffs, anybody could use Cherry Lane any time they wanted. McKamie testified that her
family had owned their tracts for approximately fifty-five or fifty-six years and that, until recently,
her family had used Cherry Lane approximately twice a day since the 1950s. Crain testified that B.L.
Benny, a radio announcer in Texarkana years ago, customarily drove down Cherry Lane in the
morning to a spot where he read his newspaper and that a lot of "parkers" would use Cherry Lane
at night. In addition, employees of Twitty Nursery as well as customers of Twitty Nursery used
Cherry Lane to access certain parts of the nursery. 
            Wright presented no evidence disputing the public use of Cherry Lane before her purchase
of the property in 1983. While Wright did testify that Bowie County has never maintained Cherry
Lane,


 she did not testify as to whether members of the public used Cherry Lane before she owned
the property. All of the other witnesses called by Wright limited their testimony to events after 1983. 
But events after 1983 are not at the crux of this inquiry.



            When viewed in a light most favorable to the verdict, the evidence at trial conclusively
established that the public used Cherry Lane for at least twenty-five years before Wright purchased
the property. That constituted long and continuous public use.



 
 
Conclusion
            Since the origin of the road is shrouded in obscurity, the evidence of long and continuous use
by the public raises a presumption that Cherry Lane had been dedicated to public use. There is no
evidence that rebuts the pre-1983 presumption of dedication.


 Because we hold Cherry Lane is a
public road due to its implied dedication, we decline to address the remaining points of error raised
by the Reeds. We reverse the judgment of the trial court and render judgment that Cherry Lane is
a public road.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          December 8, 2004
Date Decided:             January 20, 2005