COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

§

IN THE INTEREST OF S.H. and K.H., §
Children.

§

§

§

No. 08-16-00052-CV

Appeal from the

65th District Court

Of El Paso County, Texas

(TC# 2010CM6668)

## O P I N I O N

This is an appeal from an order in a suit to modify the parent-child relationship. Appellee Michael Hogg (Hogg) was the petitioner in the trial court; Appellant Amabilia Payen (Payen) was the respondent. Payen asserts error in the modifications concerning possession of and access to the children, as well as child support. We affirm the order in its entirety.

## BACKGROUND

Pursuant to the parties' Final Decree of Divorce, Payen and Hogg were appointed joint managing conservators of their two children, S.H. and K.H. Hogg was given the exclusive right to designate the primary residence of the children within El Paso County. Payen was granted possession and access according to the Standard Possession Order and was required to pay child support according to statutory guidelines. Hogg later filed a motion to modify the decree to

increase the amount of child support based on changed circumstances. In response to that motion, Payen moved to modify the decree to designate her as managing conservator with the right to determine the primary residence of the children. She also requested that the provisions for possession and access, as well as child support, be modified accordingly.

A jury trial was held in which the only issue submitted to the jury inquired whether the order designating Hogg as the conservator with the exclusive right to designate the primary residence of the children should be modified to designate Payen as having that exclusive right. The jury answered that the order should be so modified. The record shows that, upon receipt of the verdict, Payen assumed that the court would enter an extended standard provision for possession and access. Hogg objected on the ground that no evidence had been adduced concerning possession and access or child support. The court stated that a separate hearing would be held on possession and access.

On November 16, 2015, at the close of an evidentiary hearing on possession and access, the court ruled that it would (1) employ a "two/two/five/five split" for possession of the children,[1] (2) keep the holiday schedule the same, and (3) follow the standard possession order for the summer. The court also ordered that the children stay in their present school until the end of the 2015-2016 school year. After that time, Payen could decide what school to enroll them in. Concerning child support, the court stated, "I have Mr. Hogg as making 55,715 and Ms. Payen making 73,000." The court did not calculate the amount of the parties' child support obligations, but stated that child support would be equalized "now that [the parties] are going to be doing 50/50."

---

[1] This format provides that one parent has possession of the children on Mondays and Tuesdays, the other parent has possession on Wednesdays and Thursdays, and the parents alternate possession on weekends.

On January 8, 2016, the court signed an "Order In Suit To Modify Parent-Child Relationship" ("Order") reflecting its November 16, 2015 rendition of judgment. That Order names Payen as the conservator with the exclusive right to designate the children's primary residence, grants possession and access to both parties utilizing a "2-2-5-5" schedule, and orders Payen to pay monthly child support of $412.63.

Payen subsequently filed a motion to reform the Order to "utilize[] the Texas Standard Possession Order and the Texas guidelines for child support." At a hearing on that motion, Payen sought to present evidence that the "2-2-5-5" schedule ordered by the court was detrimental to the children. The court ruled that a motion to reform was not the appropriate vehicle and refused to permit the testimony. Payen later presented the excluded evidence in a bill of exception. Payen also asked the court at that time to recalculate its child support order based, in part, on changed circumstances occurring after the order was entered. The court refused that request.

## ISSUES

Payen asserts that the trial court's Order contravenes the jury verdict designating her as the custodian with the exclusive right to determine the children's primary residence. Specifically, she contends that the court contravened the verdict by (1) setting roughly equal periods of possession during the school year; (2) directing that the children attend the school closest to Hogg; and (3) granting substantially greater possession to Hogg during the children's summer vacation. Payen also asserts as error that the court delegated the calculation of child support to Hogg's counsel, and that the calculation of child support was erroneous.

Hogg responds that the terms of possession, access, and child support are matters within a trial court's discretion, and that the court here did not abuse that discretion. Hogg further contends

3

that Payen waived any complaint concerning the sufficiency of the evidence underlying the court's exercise of its discretion because Payen did not file a request for findings of fact and conclusions of law or a motion for new trial.

## STANDARD OF REVIEW

"Orders concerning child support and periods of possession will not be disturbed on appeal unless the complaining party can demonstrate a clear abuse of discretion." *Norris v. Norris*, 56 S.W.3d 333, 337 (Tex.App.—El Paso 2001, no pet.)(citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)(applying abuse of discretion standard with regard to child support order); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)(applying abuse of discretion standard with regard to possession order)). A trial court does not abuse its discretion if there is "some evidence of a substantive and probative character" to support its decision. *Norris*, 56 S.W.3d at 338.

## DISCUSSION

### *Possession and access*

Payen first notes that a trial court is statutorily prohibited from contravening a jury verdict on the issue of "the determination of which joint managing conservator has the exclusive right to designate the primary residence of the child." TEX.FAM.CODE ANN. § 105.002. While this is a correct statement of the law, it has no application here. The jury determined that Payen should have the exclusive right to designate the children's primary residence, and that is precisely what the trial court ordered:

> IT IS ORDERED that AMABILIA PAYEN, as a parent joint managing conservator, shall have the following rights and duty:
>
> l.   the exclusive right to designate the primary residence of the children within El Paso County, Texas.

4

Payen argues that, despite this language, other terms of the Order effectively negate her exclusive right. She specifically identifies the "2-2-5-5" possession schedule, the summer possession schedule, and the requirement that the children remain in their present school for the 2015-2016 school year as contravening the jury's verdict. In support of this argument, she relies heavily on the opinion in *Albrecht v. Albrecht*, 974 S.W.2d 262, 266 (Tex.App.—San Antonio 1998, no pet.). But, while the issues in *Albrecht* and in this case are similar, the facts are significantly different.

In *Albrecht*, a jury found that the father should be designated joint managing conservator with primary care for his son. *Id.* at 264. The divorce decree reflected this finding by granting the father the "exclusive right to establish the primary physical residence of the child." *Id.* at 265. But the decree awarded possession of the child to the father only from June 1 to December 1 each year; it awarded possession to the mother from December 1 to June 1. *Id.* at 264. The court of appeals concluded that this provision effectively permitted the mother to establish the child's primary residence for every other six-month period. *Id.* at 265. For this reason, the order contravened the jury's verdict granting to the father the right to establish the child's primary residence. *Id.*

The fact that Hogg and Payen are awarded substantially equal time with the children does not, in itself, contravene the jury's verdict. *Albrecht* itself acknowledges that the Texas Family Code neither recommends nor prohibits equal time between parents who are named joint managing conservators, even if one parent is given "slightly greater power" such as the right to designate the child's primary residence. *Id.* at 265. The "2-2-5-5" schedule and the summer schedule here at issue, unlike the six-month split in *Albrecht*, do not impede Payen's ability to determine the

5

children's primary residence because they do not effectively require the children to periodically change their residence. Regardless of time spent with Hogg, their primary residence remains wherever Payen determines it to be.[2] The possession provisions therefore do not contravene the jury's verdict awarding to Payen the right to make that determination.

The only provision in the court's Order that potentially impacts Payen's exclusive right is the order that the children remain in their present school for the remainder of the 2015-2016 school year. *See Albrecht*, 974 S.W.2d at 266 ("In Texas, public school attendance is normally dictated by residency."). But, as Payen acknowledges, any complaint concerning that provision is now moot because the 2015-2016 school year has ended. *See Taylor v. Margo*, 508 S.W.3d 12, 23 (Tex.App.—El Paso 2015, pet. denied)("an issue may be moot if it becomes impossible for the court to grant effectual relief for any reason"). The order regarding that school year therefore has no bearing on the outcome of this appeal.

Although Payen casts her complaint in terms of the Order contravening the jury's verdict, the real point of contention is the substance of the Order's terms on possession and access. But the specific terms and conditions of possession of or access to a child are distinct from the determination of which parent has the exclusive right to designate the child's primary residence. In fact, while the latter issue may be submitted to a jury, a trial court is statutorily prohibited from submitting the former issue. *See* TEX.FAM.CODE ANN. § 153.002(c)(1)(D), (2)(B). Thus, the specific terms and conditions of possession and access are for the court alone. *See id.* And, as noted above, those matters are subject to the court's discretion. *Norris*, 56 S.W.3d at 337.

---

2 Payen is limited by the provision in the order that the children's primary residence be in El Paso County, Texas.

Payen appears to assert that the trial court was required to employ the Texas Standard Possession Order. *See* TEX.FAM.CODE ANN. § 153.3101 *et seq.* There is, of course, a rebuttable presumption that the standard order is in the best interest of the child. *Id.* at § 153.252. But the presumption is just that—rebuttable. Once "evidence contradicting the presumption has been offered, the presumption disappears and is not weighed or treated as evidence." *Long v. Long*, 234 S.W.3d 34, 37 (Tex.App.—El Paso 2007, pet. denied)(citing *Gen. Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex. 1993)); *accord Lide v. Lide*, 116 S.W.3d 147, 152 (Tex.App.—El Paso 2003, no pet.). The best interest of the child remains, at all times, the paramount concern. TEX.FAM.CODE ANN. § 153.002.

Hogg asserts that Payen did not preserve error concerning the sufficiency of the evidence because she did not file a request for findings of fact and conclusions of law or a motion for new trial. But the sufficiency issues in this case concern the evidence on issues tried to the court, not the issue tried to the jury. "In a civil nonjury case, a complaint regarding the legal or factual insufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief." TEX.R.APP.P. 33.1. Even so, Payen's failure to file a request for findings of fact under the Texas Family Code does affect the scope of appellate review.

Section 153.258 of the Texas Family Code provides,

> In all cases in which possession of a child by a parent is contested and the possession of the child varies from the standard possession order, including a possession order for a child under three years of age, on request by a party, the court shall state in writing the specific reasons for the variance from the standard order.

TEX.FAM.CODE ANN. § 153.258(a). Where an appellant has failed to request fact findings under Section 153.258, the reviewing court will review the record in the light most favorable to the judgment, imply all findings necessary to support the judgment, and uphold the judgment on any

7

legal theory that finds support in the evidence. *Matter of Marriage of Harrison*, 557 S.W.3d 99, 131 (Tex.App.—Houston [14th Dist.] 2018, pet. denied).

The trial court heard considerable evidence at the hearing on possession and access, much of which concerned the special needs of one of the children. Such needs are one of the factors a court is required to consider when ordering terms of possession other than the standard possession order. TEX.FAM.CODE ANN. § 153.256. The question, then, is whether there is "some evidence of a substantive and probative character" to support the court's decision to deviate from the standard possession order. *See Norris*, 56 S.W.3d at 337 (decision supported by some evidence of a substantive and probative character is not an abuse of discretion).

While we hold that Payen did not waive error concerning the sufficiency of the evidence, we note that she does not expressly *raise* insufficiency of the evidence as error. And, more problematically, Payen does not address in her brief any of the evidence admitted at the possession and access hearing. In any event, we have conducted an independent review of the record and conclude that there is evidence of a substantive and probative character that supports the trial court's possession and access order. In particular, we may infer from the record that the trial court determined that the special needs of one of the children warranted varying from the Standard Possession Order, and the court's order may be upheld on that legal theory. *Marriage of Harrison*, 557 S.W.3d at 131. That order therefore does not constitute an abuse of discretion. *See Norris*, 56 S.W.3d at 337.

Payen's issues asserting error in the possession and access terms of the trial court's Order are overruled.

### *Child support*

The trial court orally found that Payen's annual earnings were $73,000 and Hogg's were $55,715. The written order recites that Payen's net resources per month are $6,083.00 and that Hogg's net resources per month are $3,392.10. The order states that Payen is obligated to pay monthly child support of $1,112.25 to Hogg, and Hogg is obligated to pay monthly child support of $699.62 to Payen. After offsetting those obligations, the Order requires Payen to pay monthly child support of $412.63 to Hogg.

Payen first contends that the trial court erred by delegating to counsel for Hogg the responsibility to determine the amount of child support. It is not clear from the record, however, that any such delegation occurred. The court stated at the close of the November 16 hearing that it could not determine child support until it knew how much Hogg was paying in health insurance. Hogg had testified that he paid approximately $300 per month for four children, but he did not know the exact amount. The court then stated,

> Child support will be—and I have Mr. Hogg as making 55,715 and Ms. Payen making 73,000 so we'll go ahead once—Ms. Ronconi [counsel for Hogg], you can figure out how much Mr. Hogg is paying. Let's do the equalization of the child support now that they're going to be doing 50/50.

It appears that the instruction to figure out what Hogg "is paying" refers to the cost of health insurance for the children, the figure that the court specifically noted was missing. The statement does not establish that the court delegated to counsel the responsibility of deciding the issue of child support.

Counsel for Hogg prepared a draft order and asked counsel for Payen to provide a pay stub to confirm Payen's earnings. Counsel for Payen refused, stating that "[t]he only evidence before the court is the testimony at the hearing." Counsel for Hogg responded that she would revise her draft to reflect what Hogg testified to (apparently rather than the more precise figures evidenced

9

by his own pay stubs). Counsel for Payen's only complaints in response were that the hearing dates in the draft order were wrong and that Hogg's gross income was incorrectly calculated.

At a later hearing on Payen's motion to reform the Order, counsel for Payen stated,

> I would indicate to the court the court did not make a decision of child support in November but delegated that authority to Ms. Ronconi who incorrectly calculated the amounts of child support and so an incorrect amount was entered by the court.

Counsel for Hogg then explained,

> With regards to child support, I did make a calculation of child support based on what this court suggested that I do which is an appropriate offset based on Mr. Hogg's income and Ms. Payen's income. I then attempted to get verification of her income so that I could do a calculation and Mr. Hedicke refused to provide it to me so I relied on the information that I had presented at the time of trial. If that was incorrect it was not because I did not attempt to get corrected information, I was refused. But if Mr. Hedicke is unhappy with the calculation I made, there's an appropriate motion that can be filed, but that motion is not before the court right now.

This exchange demonstrates that Payen objected to the amount of child support calculated by counsel for Hogg, but not to the fact that counsel conducted the calculation. Rather, he merely noted as a factual matter that counsel for Hogg did the actual calculation. In addition, counsel for Payen expressly stated at a subsequent hearing, "we're not concerned with her calculation about my client [Payen], we're not objecting to that. It's her calculation as to her client . . . ." Clearly, Payen's complaint concerns the result of the child support calculation, not who made that calculation.

Payen never brought to the trial court's attention any assertion that it had improperly delegated the child support issue to counsel for Hogg. For this reason, no error concerning any such alleged delegation is preserved. *See* TEX.R.APP.P. 33.1(a). In any event, the record as a whole demonstrates that the trial court did not improperly delegate the responsibility to decide child support. The court made the necessary fact-findings on each party's income; counsel simply

conducted the statutory calculations using those found facts to determine the amount of child support.   Payen's assertion that the trial court improperly delegated the responsibility to determine child support is overruled.

Payen next asserts that the child support calculation is erroneous because Hogg's net resources should have been computed by dividing his $55,715 salary by ten months rather than by twelve.   Hogg testified that he is employed as a teacher and football coach, and his $55,715 salary is paid over a ten-month period.   There is no evidence of wages, if any, Hogg earns during the summer months.   Thus, the evidence is that Hogg earned $55,715 annually.   That figure does not change depending on whether it was paid over the course of twelve months, ten months, or in one lump sum.   There are twelve months in a year, regardless of how many pay periods those months may encompass.   Thus, Hogg's average monthly income was properly determined by dividing his annual income by twelve.

Payen next asserts that the following recitations in the Order are inconsistent:

1.  The application of the percentage guidelines in this case would be unjust or inappropriate.

.          .          .

4.  The percentage applied to the first $8,550 of AMABILIA PAYEN's net resources for child support is 25 percent.

5.  The percentage applied to the first $8,550 of MICHAEL HOGG's net resources for child support is 20.63 percent.

We do not find these recitations to be inconsistent.   It appears that, under the guidelines contained in Section 154.125 of the Family Code, the percentages applied to both Hogg's and Payen's obligations would have been 25 percent.   TEX.FAM.CODE ANN. § 154.125(b).   But the Order applies only 20.63 percent to Hogg's obligation, indicating that it was the application of 25

11

percent to Hogg's obligation that the court found would be unjust or inappropriate. There is, thus, no inconsistency.

Finally, Payen contends that, after offsetting Hogg's child support obligation against her own, she should have been ordered to pay only half of the difference, not the entire difference. Payen offers no explanation for this contention and we cannot discern one. Payen is obligated to pay Hogg $1,112.25, Hogg is obligated to pay Payen $699.62. If they had simply paid one another, Hogg would have been made whole and would have received an additional $412.63. Payen would have been reimbursed $699.62, leaving her out-of-pocket $412.63. The trial court simplified the process by ordering that Payen pay Hogg $412.63, the precise amount she would ultimately have paid if the court had not offset the parties' obligations.

Payen's issues asserting error in the child support terms of the court's Order are overruled.

## CONCLUSION

Having overruled all of Appellant Amabilia Payen's issues, we find she has not demonstrated that the terms of possession, access, and child support contained in the appealed Order constitute an abuse of discretion. The Order is affirmed.

June 12, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

12