NO. 07-03-0524-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MARCH 21, 2005
_____

IN THE INTEREST OF BRITTANY NICOLE SANDERS
_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 63,497-D; HON. DON R. EMERSON, PRESIDING
_____

***Opinion***
_____

Before QUINN, REAVIS, and CAMPBELL, JJ.

Gail Wayne Sanders (Sanders) appeals from an order establishing his parentage as father of Brittany Nicole Sanders and ordering him to pay retroactive child support of $52,400, attorney's fees, and court costs. Though not contesting paternity, he nonetheless attacks the trial court's 1) failure to execute findings of fact and conclusions of law supporting its determination, 2) award of $52,400 as retroactive support, and 3) award of $8,000 as attorney's fees. We affirm the judgment of the trial court.

*Background*

The dispute before us involves the attempt by Rolisa Carol Utzman to establish that Sanders was the father of her child Brittany and obtain retroactive child support. Brittany was born on November 30, 1984, and Rolisa and Sanders continued to have a relationship

through 1991. Throughout this time and continuing through the date of trial, Sanders was married to another person.

After an evidentiary hearing, the trial court found that the amount of net resources available to Sanders beginning January, 1991, and continuing through May of 2003, was in excess of $4,000 per month. It also concluded that Sanders' retroactive child support was $400 per month for the same period and that he owed Utzman a total of $52,400.

*Issue One – Findings of Fact*

Sanders' first issue involves the trial court's failure to timely execute findings of fact and conclusions of law. The record discloses that he did ask the trial court to execute findings of fact and conclusions of law per Texas Rule of Civil Procedure 296. And, though the trial court did not comply with the request within the time parameters established by the applicable rules of procedure, it nevertheless executed a set on March 22, 2004. Those findings have also been made part of the appellate record. Furthermore, Sanders has not contended that they are deficient; nor has he asked for an opportunity to re-brief the issues in view of the findings and conclusions.

It is clear that we may remedy the trial court's failure to execute findings and conclusions by abating the appeal, remanding the cause, and directing the trial court to issue same. *Lubbock County Cent. Appraisal District v. Contrarez,* 102 S.W.3d 424, 426 (Tex. App.–Amarillo 2003, no pet.). Since the trial court effectuated that remedy *sua sponte*, we cannot but hold that Sanders' complaint has become moot. Thus, we overrule the first issue.

*Issue Two – Retroactive Child Support*

Through his second issue, Sanders contends that the trial court abused its discretion in ordering him to pay $52,400 as retroactive support. This is allegedly so because the award lacks evidentiary support and the trial court failed to reduce the sum by the support he had already paid. Moreover, the award supposedly lacks evidentiary support because the evidence fails to illustrate that his net resources exceeded $4000 per month as found by the trial court. We overrule the issue.

We review the decision of the trial court under the standard of abused discretion. *See In re Tucker,* 96 S.W.3d 662, 668 (Tex. App.–Texarkana 1998, no pet.) (stating that the courts of appeal review an award of retroactive child support for an abuse of discretion); *Garza v. Blanton,* 55 S.W.3d 708, 710 (Tex. App.–Corpus Christi 2001, no pet.) (stating that whether to award retroactive support and the amount awarded lies within the discretion of the trial court). Furthermore, whether it properly exercised its discretion depends upon not only whether it acted with reference to guiding rules and principles, *In re Hamer,* 906 S.W.2d 263, 265 (Tex. App.–Amarillo 1995, no writ), but also whether the decision enjoys evidentiary support. *See id.* at 265 n.1 (holding that while the existence of evidence supporting the trial court's decision is not an independent ground of attack, it is nonetheless an indicia to consider when determining if the trial court abused its discretion). Moreover, we are obligated to view the evidence in the light most favorable to the trial court's decision and indulge in every presumption favoring the judgment. *In re Tucker,* 96 S.W.3d at 664-65.

Next, should the trial court decide to award retroactive support, it is then free to turn to the child support guidelines found in Chapter 154 of the Family Code to help in

ascertaining the amount of the award.  *See* TEX. FAM. CODE ANN. §154.131(a) (Vernon 2002) (stating that the "child support guidelines are intended to guide the court in determining the amount of retroactive child support, if any, to be ordered").  And, while compliance with those guidelines is not mandatory, *In re Valadez*, 980 S.W.2d 910, 913 (Tex. App.–Corpus Christi 1998, pet. denied), it must nonetheless "consider" the "net resources" of the father during the relevant time period and whether 1) the mother of the child had made any previous attempts to notify the father of his paternity, 2) the father had knowledge of his paternity, 3) the order of retroactive child support will impose an undue financial hardship on the father or his family, and 4) the father provided actual support or other necessaries before the filing of the action. TEX. FAM. CODE ANN. §154.131(b) (Vernon 2002).  Finally, the term "net resources" means all the income received by the obligor, *id.* §154.062(b), but not his losses.  *In re Grossnickle*, 115 S.W.3d 238, 248 (Tex. App.–Texarkana 2003, no pet.); *Fanning v. Fanning*, 828 S.W.2d 135, 150 (Tex. App.–Waco 1992), *rev'd on other grounds*, 847 S.W.2d 225 (Tex. 1993) (involving the similarly worded predecessor to §154.062(b) of the Family Code).

The evidence of record contains both the joint tax returns filed by Sanders and his wife during the years 1991 through 2001 and a summary of those returns.  They illustrate that the couple had income totaling $1,261,748 for the ten-year period.  Moreover, dividing the sum by ten results in an average annual income approximating $126,175.  *See Norris v. Norris*, 56 S.W.3d 333, 341-42 (Tex. App.–El Paso 2001, no writ) (holding that the trial court did not abuse its discretion in determining monthly resources by averaging the obligor's income over a period of time).  And, while Sanders testified that most of the

4

income was earned by his wife or from her separate property, the trial court was free to disbelieve him.[1]  So, it could well have decided to attribute the entire amount to him.[2]

Next, given an average annual income of $126,175, and in view of the guidelines appearing in §154.061 of the Family Code (which guidelines are used in calculating net monthly income), one could reasonably conclude from the record before us (and assuming that the trial court discredited his testimony about who generated the income) that Sanders net monthly income was around $7170 for that ten-year period.  Finally, the latter sum does exceed $4000 per month, as found by the trial court.  So, we reject Sanders' argument that there "is insufficient evidence of Appellant's resources to support the judgment . . . ."[3]

---

[1]Indeed, the trial court expressly questioned the credibility of Sanders' testimony at trial.  This may be due to the evidence that even though his estranged wife supposedly owned the assets generating the income he, nonetheless, exercised extensive control over them and had income generated by them sent to his own address.

[2]While authority holds that a trial court cannot arbitrarily allot a percentage of community income to one spouse or another, *see e.g., Powell v. Swanson*, 893 S.W.2d 161, 163-64 (Tex. App.–Houston [1st Dist.] 1995, no writ), we again note that the trial court had before it evidence indicating that Sanders, as opposed to his wife, operated the businesses which generated the income and had much of that income sent to his own mailing address.  Furthermore, he had sufficient monies to allegedly buy homes for his child's mother, renovate those homes, buy $70,000 worth of ostriches, buy and give cars to the mother of his child, and buy a quarter of a million dollars worth of cars while supposedly having little income of his own.  This provides some evidence upon which the trial court could have reasonably allotted the income appearing on the tax returns to Sanders.

[3]In so holding we again note that business losses (other than those suffered by a self-employed individual) are excluded when determining an obligor's net resources. *In re Grossnickle*, 115 S.W.3d 238, 248 (Tex. App.–Texarkana 2003, no pet.); *Fanning v. Fanning*, 828 S.W.2d 135, 150 (Tex. App.–Waco 1992) *rev'd in part on other grounds*, 847 S.W.2d 225 (Tex. 1993).  So, while the tax returns indicated that Sanders had little income for tax purposes due to losses he suffered, that does not mean that he had little income for purposes of determining his child support obligation. *See Powell v. Swanson*, 893 S.W.2d 161, 163 (Tex. App.–Houston [1st Dist.] 1995, no writ) (noting the difference between calculating resources for income tax purposes and calculating them for purposes of child support).  And, to the extent he posits that various of the losses were actually losses experienced while self-employed, the trial court could have rejected the proposition that he was self-employed.  Sanders did admit to being the vice-president of Cottonwood Cove Investment Corporation, a corporation through which he conducted many business transactions.  Furthermore, while he also suggests that his auto and real estate businesses were his own, he fails to cite us to evidence illustrating that they were sole proprietorships as opposed to corporations.  And, if they were the latter, then he cannot be considered self-employed when operating them, given the separate identity of a corporate entity.

We next address Sander's attack upon the finding wherein the trial court determined that "the percentage applied to the first $6,000.00 of . . . Sanders' net resources for child support by the actual order rendered is 16 percent." This argument is premised upon the allegation that the trial court found Sanders' net resources "to be $4,000.00 not $6,000.00." However, the pertinent finding actually states that his net resources were "in *excess* of $4,000.00 per month," not simply $4000. Furthermore, the calculations made earlier in this opinion could have supported a finding that his income approximated $7000 per month. Additionally, 16 percent of $7000 and $6000 is $1120 or $960, respectively, and both sums are far more than the $400 monthly support obligation that the court applied retroactively. So, in essence, we cannot see how he was or is harmed by the finding, assuming it is inaccurate.

Sanders also posits that the trial court needed to enter findings required by the Family Code. The findings in question involved some explanation justifying the trial court's decision to simply not set the support obligation at 20 percent of Sanders' net resources. Yet, this argument is premised upon the acceptance of Sanders' testimony that his net resources were actually far less than $4000 per month. As stated before, the trial court was entitled to disbelieve him and conclude that his resources were actually greater than that amount.

We next consider the suggestion that the trial court erred in failing to give Sanders credit for the child support he paid between 1991 and 2001. This argument is founded upon that portion of the Family Code requiring the trial court to consider whether the obligor provided actual support or other necessaries to the child before suit was initiated. TEX. FAM. CODE ANN. §154.131(b)(4) (Vernon 2002). And, we reject it for several reasons.

6

First, §154.131(b)(4) does not expressly require the trial court to credit an obligor with past support payments. It simply states that the trial court "shall consider" whether the obligor provides support or necessaries in ordering retroactive support. TEX. FAM. CODE ANN. §154.131(b)(4) (Vernon 2002). Moreover, the plain meaning of the word "consider" encompasses the act of thinking about or contemplating something. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 265-66 (11th ed. 2003). And, requiring one to think or contemplate about a particular act is a far cry from ordering that the particular act be done. Furthermore, inherent in the term is the concept of discretion; that is, while the person told to think about doing something may have to think about it, the directive leaves the decision whether to do the thing up to him. And, given this interpretation, we cannot say that the trial court failed to consider Sanders' prior efforts at support. For instance, the trial court could have considered whether the houses and car given Rolisa by Sanders were actually intended to be child support. In so contemplating the matter, it could have recalled the evidence illustrating that Sanders was living with Rolisa at the time while still married to his wife. And, had it so recalled that evidence, it could have also concluded that maybe the house and car were actually provided to facilitate the extramarital relationship, and not to help out his daughter.

Additionally, our analysis of the record (as discussed above) uncovered evidence that would have supported a finding that Sanders actually had monthly net resources exceeding $6000, not just $4000. And, to the extent that the trial court was authorized to presumptively order an obligor to pay 20% of his net resources as child support (as previously argued by Sanders), it could have found Sanders' retroactive obligation to be

7

$1200 per month, as opposed to simply $400.[4]  Indeed, if it only found that Sanders'

resources were $4000 per month, the trial court could have ordered him to pay $800 per

month in retroactive support.  Yet, it merely ordered him to pay $400.  Given this, we

cannot say that the trial court failed to "consider" Sanders' prior attempts at support in

determining the amount of retroactive support to award.

*Attorney's Fees*

In his next and last issue, Sanders alleges that the trial court erred in awarding

counsel for Brittany's mother attorney's fees of $8000.  This was purportedly error because

the recipient of the fees did not segregate the amount incurred in prosecuting the action to

establish parentage from that related to obtaining retroactive support.  Moreover, such

segregation purportedly was required because Sanders admitted to paternity immediately

after he was sued.  We overrule the issue.

Statute provides for the recovery of attorney's fees incurred in establishing

parentage.  TEX. FAM. CODE ANN. §160.636(c) (Vernon 2002).  Furthermore, attorney's fees

may be awarded in any suit arising under Title 5 of the Texas Family Code.  TEX. FAM.

CODE ANN. §106.002(a) (Vernon Supp. 2004-05).  Proceedings to recover retroactive child

support fall under Title 5.  *See e.g.* TEX. FAM. CODE ANN. §154.009(a) (Vernon 2002) (a

provision allowing the court to order a parent to pay retroactive child support and falling

under chapter 154 of Title 5 of the Family Code).  Thus, attorney's fees may be awarded

in a suit to recover retroactive support.  So, because fees are recoverable in both a suit to

establish parentage and to obtain retroactive fees and those were the two claims Brittany's

---

[4]Twenty percent of $6000 is $1200.

mother pursued, neither she nor her attorney were obligated to segregate the fees as alleged by Sanders.

Having overruled all issues, we affirm the judgment of the trial court.


Brian Quinn
Justice