Affirmed and Opinion filed April 24, 2008








Affirmed and Opinion filed April 24, 2008.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00593-CV

_______________

 

DAVID LAWRENCE SWAAB, Appellant

 

V.

 

JANIE GUERRA SWAAB, Appellee

                                                                                                                                               


On Appeal from the 246th District Court

Harris County, Texas

Trial Court Cause No. 03B53142

                                                                                                                                               


 

O P I N I O N

Appellant David Lawrence Swaab
challenges the trial court=s final judgment in his suit for divorce.  In twelve issues,
he contends the trial court abused its discretion with regard to: (1) its award
of child support, (2) its division of the marital estate, (3) conservatorship
issues, (4) the amount of time it allotted for his review of the proposed final
divorce decree, and (5) its imposition of a requirement that the parties
mediate prior to filing a suit for modification.  We affirm.

 








I.  Factual
and Procedural Background

David Lawrence Swaab and Janie Guerra
Swaab were married in March 1994.  They have one child, A.S, who was born on
July 14, 1996.[1]  On September
24, 2003, Janie filed a petition for divorce; David filed an answer and later
filed a counter-petition.  

The trial court conducted a four-day
bench trial in May 2006, with the parties presenting evidence on property,
child support, and conservatorship issues.  But prior to the conclusion of
trial, the parties announced they had entered into a Rule 11 property
settlement agreement (ASettlement Agreement@),[2]
in which they agreed: 

$                  
David would pay $125,657 to Janie
secured by a lien on their residence (the AFairhope
Property@);[3] 

 

$                  
each party would assume and be
responsible for debts in that party=s= name, except that David would be responsible for the
mortgage payments on the Fairhope Property; 

 

$                  
each party would be awarded the
vehicle in his or her possession and assume its outstanding debt; and 

 

$                  
each party would
be awarded the personal property in his or her possession, and within 10 days
of signing the agreement, Janie would be allowed to remove items of personal
property from the Fairhope Property.  

Because the trial court approved the
Settlement Agreement, the only remaining contested issues concerned child
support and conservatorship.  The evidence relevant to these issues is
summarized below.








David and Janie lived together for
ten years before they married in 1994.  At the time of the trial, David had
been self-employed as a business and investment counselor working out of his
home for about thirty years. Although he did not hold a degree, David testified
that he had attended numerous colleges, including Harvard University, the
University of California at Los Angeles, the University of Texas at Austin,
Southwest University, Mississippi College, Millsaps College, and Tarrant County
Junior College.  Janie obtained an associate=s degree during the marriage and
began working as an MRI technician at some point before the hearing.  David=s mother, Ruth Swaab, testified
regarding various amounts of money she had provided during the course of her
son=s marriage.  In addition, numerous
exhibits, including the parties= individual inventory and appraisements, proposed property
divisions, and various income tax forms from prior tax years were admitted into
evidence. 

The court-appointed psychologist, Dr.
Karen Gollaher, submitted a report to the trial court with her recommendations
regarding custody of A.S.  Her evaluation was based on multiple interviews with
David and Janie, observation of their behavior with A.S., review of
questionnaires completed by them, review of various documents provided by both
parties, and individual interviews with A.S.  In her report, Dr. Gollaher
recommended that David and Janie be appointed joint managing conservators of
A.S., and that Janie be granted the exclusive right to make psychological and
educational choices for A.S., as well as to establish her primary residence. 
Dr. Gollaher also recommended that Janie take A.S. to Texas Children=s Hospital and formulate a plan to
address her weight.[4]

By letter dated May 15, 2006, the
court informed the parties= counsel that it had approved and granted the parties= proposed property division as set
forth in the Settlement Agreement.  The letter ruling further stated that (1)
Janie and David would be appointed joint managing conservators of A.S. with
Janie as the primary conservator subject to certain geographical restrictions,
(2) David would pay child support of $1,200 per month, (3) Janie would
provide A.S.=s medical insurance, and (4) Janie would have the exclusive right to make
educational and medical decisions regarding A.S.








On June 2, 2006, the trial court held
a hearing for entry of the divorce decree and subsequently signed a final
decree of divorce.  In the divorce decree, the court appointed David and Janie
joint managing conservators of A.S., and awarded Janie the exclusive right to
make medical, psychological, and educational decisions for A.S. and to
establish A.S.=s primary residence.  In addition, the trial court ordered David to pay
(a) $1,200 in monthly child support; (b) $125,657.00 to Janie, with the
debt secured by a lien on the Fairhope Property; (c) all loans owed to Ruth;
and (d) all federal income tax liabilities of the parties from the date of
marriage through the date of divorce,[5] including any
deficiencies, assessments, penalties, or interest, except that each party would
be responsible for any tax liability resulting from omission of his or her own
taxable income or his or her own erroneous deductions.  Finally, the trial
court ordered that, except in the case of an emergency, the parties must
attempt to mediate any dispute prior to filing suit for modification of the
divorce decree.  David timely filed his notice of appeal.

II.  Issues
Presented

In twelve issues, David asserts that
the trial court abused its discretion by:

$                  
setting child support at $1,200
per month in contravention of Texas Family Code child support guidelines;

$                  
entering a divorce decree ordering
that David assume federal income tax liability contrary to the parties= Settlement Agreement;

$                  
entering a divorce decree ordering
David to pay all loans due to Ruth contrary to the parties= Settlement Agreement;

$                  
failing to provide a Ajust and right@
division of the marital estate;

$                  
signing the divorce decree without
providing David reasonable time to review and lodge any objections;

$                  
applying a lien to the entirety of
the Fairhope Property;

$                  
requiring mediation prior to
modification of the divorce decree;








$                  
awarding Janie the exclusive right
to make all medical and educational decisions regarding A.S.;

$                  
awarding Janie the exclusive right
to consent to all psychiatric and psychological treatment for A.S.;

$                  
appointing Janie the joint
managing conservator with the exclusive right to establish A.S.=s primary residence; and

$                  
failing to appoint David as A.S.=s sole managing conservator.

III. 
Analysis

A.        Standard
of Review

We review a trial court=s decisions concerning
conservatorship, support, and property division under an abuse of discretion
standard.  See Grayson v. Grayson, 103 S.W.3d 559, 561 (Tex. App.CSan Antonio 2003, no pet.); see
also Schlueter v. Schlueter, 975 S.W.2d 584, 589 (Tex. 1998) (recognizing
trial court is afforded wide discretion in dividing marital estate); Worford
v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990) (noting order regarding
child support will not be disturbed on appeal absent clear abuse of
discretion).  Generally, the test for an abuse of discretion is whether the
trial court acted  arbitrarily or unreasonably, or whether it acted without
reference to any guiding rules or principles.  See Worford, 801 S.W.2d at 109; Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985); Baltzer
v. Medina, 240 S.W.3d 469, 475 (Tex. App.CHouston [14th
Dist.] 2007, no pet.). 
When a party asserts that the trial court abused its discretion due to a lack
of evidence, however, we engage in a two-pronged inquiry to determine whether
the trial court (1) had sufficient information on which to exercise its
discretion, and (2) erred in its application of discretion.  See Zeifman v.
Michels, 212 S.W.3d 582, 588 (Tex. App.CAustin 2006, pet. denied).  Thus,
there is ordinarily no abuse of discretion where some evidence of a substantive
and probative character exists to support the trial court=s decision.  Baltzer, 240
S.W.3d at 475. 

 

 








B.        Child
Support

In his first issue, David contends
that the trial court abused its discretion in ordering

him to pay monthly child support of
$1,200, in contravention of the guidelines set forth in the Texas Family Code. 
Specifically, David argues that (a) the court failed to make findings despite
his request that it do so; (b) even without a request, the trial court was
required to make findings because the amount of child support ordered varied
from the Texas Family Code guidelines; and (c) assuming the court followed the
child support guidelines, it overestimated David=s earnings potential.  

1.         Findings

As is relevant here, a trial court
must make certain specific findings regarding the computation of child support
when (a) a party makes an oral request in open court for findings during the
hearing, or (b) the amount ordered varies from the amount computed by applying
the percentage guidelines.  See Tex.
Fam. Code Ann. ' 154.130(a)(2), (3) (Vernon 2002). 

David first argues that his attorney Amade an oral request, albeit
inartfully articulated, in open court for a finding by the court of the formula
used to determine child support.@  We disagree that David=s attorney requested findings.  The
exchange at the hearing for entry of judgment during which David contends his
attorney made such an oral request occurred as follows:

B real quick. 
Your Honor, we had settled the B all the
financial issues that was [sic] involved in the B this property settlement by agreement in the middle of the trial, as
the Court may recall.  We surprised the Court one morning and said we=ve reached an agreement on attorney=s fees and property land division.  But that was B what happened then is sort of like a football player
that had both good legs.  That stuff didn=t
even exist anymore.  So, there is no finding, Your Honor, that it was based
on any type of formula that I think the statute requires if you=re not going to follow the guidelines.  I realize this B








Rather than constituting a request
for findings under subsection 154.130(a)(2), these statements instead indicate
that David did not believe the trial court followed the child support
guidelines in determining the amount of child support.[6] 
In fact, the trial court responded to these observations by stating that it had
followed the guidelines, an issue we consider next.

2.         The
Child Support Guidelines

According to the guidelines, if an
obligor=s monthly net resources are more than
$6,000, the trial court must apply the percentage guidelines to the first
$6,000 of the obligor=s net resources, which results in a minimum child support
award of $1,200 for one child.  Id. '' 154.125(b); 154.126(a).  The trial
court may, however, order additional amounts of child support Aas appropriate, depending on the
income of the parties and the proven needs of the child.@  Id. ' 154.126(a).   Where an obligor=s income fluctuates significantly, a
court may average such income for purposes of calculating child support
obligations under the statutory guidelines.  See Norris v. Norris, 56
S.W.3d 333, 341B42 (Tex. App.CEl Paso 2001, no pet.) (determining that the trial court did
not abuse its discretion by ordering  support based upon average amount of
monthly net resources for two-year period given fluctuation in obligor=s income); see also In re Sanders,
159 S.W.3d 797, 801 (Tex. App.CAmarillo 2005, no pet.) (upholding trial court=s averaging of obligor=s income for ten-year period in
determining retroactive monthly support).    

In the divorce decree, the trial
court ordered David to pay child support in the amount of $1,200 per month.  It
therefore appears that the trial court found the evidence sufficient to support
a finding that David=s monthly net resources equaled at least $6,000.  See Tex. Fam. Code Ann. ' 154.126(a).   Because David was
self-employed, his gross monthly resources must have exceeded $8,854.81 to
result in at least $6,000 in monthly net resources.  See id. ' 154.061(b) (Vernon Supp. 2007).








The undisputed evidence of David=s net resources included tax returns
for the years 1996B2002 and 2004B2005.[7]  David
verified that the income indicated on these tax returns was his alone, despite
the fact that most of these returns were filed jointly.  According to these
returns, David=s income varied from a high of $541,900 in 1997 to a low of $10,360 in
2001.  Given the undisputed fluctuation in David=s income, the trial court could have
justifiably averaged his income from these returns.[8] 
See Norris, 56 S.W.3d at 341B42; see also In re Sanders,
159 S.W.3d at 801.  According to his tax returns, David=s total gross income for this period
was $1,109,386, or an average annual income of $123,265.  This amount
represents a gross monthly income of $10,272, which exceeds that necessary to
net $6,000 per month under the self-employed persons tax chart.  Tex. Fam. Code Ann. ' 154.061(b).  Thus, we conclude
the trial court did not abuse its discretion in applying the percentage guidelines
to the first $6,000 of David=s net resources, resulting in the $1,200 child support
award.  Id. '' 154.125(b), 154.126(a).  Because the trial court=s child support order conforms to the
guidelines, the trial court was not required to make findings.  Id. ' 154.130(a)(3).  








In sum, given the dramatic
fluctuation in David=s self-employment income, the trial court had the discretion
to average David=s past income to determine his approximate net monthly
resources.[9]  Under these
circumstances, we cannot say that the trial court abused its discretion in
ordering $1,200 per month in child support.  Accordingly, we overrule David=s first issue.[10]

C.        Income
Tax Liability

In his second issue, David contends
the trial court abused its discretion by ordering him to assume federal income
tax liability contrary to the parties= Rule 11 agreement.  In the divorce
decree, the trial court ordered that David Ashall be one hundred (100%)
responsible for all federal income tax liabilities of the parties from the date
of marriage through the date of divorce, and shall timely pay one-hundred
percent (100%) of any deficiencies, assessments, penalties, or interest due
thereon . . . .@[11]  








As is relevant here, to preserve
error for appeal, a party must bring his complaint to the trial court=s attention by timely request,
objection, or motion.  See Tex.
R. App. P. 33.1(a); In re Marriage of Lendman, 170 S.W.3d 894,
898 (Tex. App.CTexarkana 2005, no pet.) (noting trial court has no opportunity to rule
on issue or to correct ruling made in error where matter is not presented to
court (citing Lewis v. Tex. Employers Ins. Ass=n, 246 S.W.2d 599, 600 (1952))).  But our review of the
record indicates David did not complain to the trial court about this provision
in the divorce decree.  In failing to do so, he has not preserved this
issue for our review.  We therefore overrule David=s second issue.

D.        Repayment of Loans

In his third issue, David contends
the trial court abused its discretion by ordering  him to repay all of the
loans owed to Ruth.  He argues this order is contrary to the parties= Rule 11 Settlement Agreement.  But
the Rule 11 Agreement between David and Janie makes no mention of any specific
loans; in fact, the only reference to debts included in the agreement requires
each party to Aassume and be responsible for debts in the respective parties= names . . . .@  The trial court subsequently
approved the Settlement Agreement and, as part of the division of the marital
estate in the divorce decree, ordered that David pay A[a]ll loans payable to Ruth W. Swaab.@








In support of his argument that the
trial court abused its discretion in ordering that he assume sole
responsibility for repayment of the loans owed to Ruth, David contends that
Janie=s proposed property division
allocated the loan repayments equally between them.  But a close examination of
Janie=s proposed property division does not
support this assertion; only David=s proposed property division reflects
both the loans to Ruth and an equal allocation of payments for those loans.  We
find no evidence in the record to suggest that Janie ever agreed to assume
repayment of one-half of any loans owed to Ruth.[12] 
Moreover, Ruth testified that if the loans were not repaid, the debt would be
taken out of David=s inheritance.  Hence the trial court reasonably could have
concluded that these loans, if any, were made solely to David. 

Based on this evidence, we conclude
the trial court did not abuse its discretion by ordering David to assume
responsibility for repayment of any loans owed to Ruth.  Accordingly, we
overrule David=s third issue.

E.        Division of Marital Property

In his fourth issue, David contends
the trial court abused its discretion by failing to divide the marital estate
in a Ajust and right@ manner.  Specifically, he argues the
division is disproportionate because AJanie has received all of the assets
of the marital estate and [he] has received nothing but liabilities and [] is
incapable of bearing the burden placed upon him by the court.@

To promote the amicable settlement of
disputes in a suit for divorce, spouses may enter into a written agreement
concerning the division of their property and liabilities.  Tex. Fam. Code Ann. ' 7.006(a) (Vernon 2006).  If the
trial court finds that the terms of such an agreement are just and right, those
terms are binding on the court.  Id. ' 7.006(b).

As noted
above, David and Janie entered into a Rule 11 Settlement Agreement prior to
entry of the divorce decree, which provided for the division of the marital
estate.  At trial, David=s attorney informed the court that his client had initialed
the Agreement and requested that the court approve and adopt it.  The trial
court approved the Settlement Agreement, and its terms were incorporated into
the division of the marital estate in the divorce decree. 








On
appeal, David faces two problems.  First, he has not explained how the property
division included in the divorce decree differs from the Settlement Agreement
he and Janie entered.  Second, and more importantly, David has not directed us
to any evidence that he repudiated, or otherwise objected to, the Settlement
Agreement before rendition of the divorce.  See, e.g., Baylor
College of Medicine v. Camberg, CS.W.3dC, 2008 WL 220323, at *3 (Tex. App.CHouston [14th Dist.] Jan. 29, 2008,
no pet. h.) (noting that an appellant must establish the trial court was aware
of withdrawal of consent to a settlement agreement to require a new trial); see
also Tex. Fam. Code Ann. ' 7.006(a), (b) (providing that
spouses in a suit for divorce may enter into a written agreement concerning the
division of property and liabilities and that the trial court is bound by the
terms of such an agreement when it finds it is Ajust and right@).  Under these circumstances, we
cannot say the trial court abused its discretion by entering judgment based on
the parties= Settlement Agreement.  See First Heights Bank, FSB v. Marom, 934
S.W.2d 843, 845 (Tex. App.CHouston [14th Dist.] 1996, no writ); see also Zavala v.
Zavala, No. 14-06-00081-CV, 2007 WL 1558732, at *4 (Tex. App.CHouston [14th Dist.] May 31, 2007, no
pet.) (mem. op.).  We therefore overrule David=s fourth issue.

F.        Reasonable Time for Review

In his
fifth issue, David contends the trial court abused its discretion by signing
the divorce decree without providing him a reasonable amount of time to review
and lodge objections to the divorce decree.  He argues that because the divorce
decree contained provisions not agreed to by the parties, the court=s failure to do so constitutes
harmful error.








In
support of his argument, David directs us to Harris County Family Court Local
Rule 3.8, which provides, in relevant part: AThe party who is directed to prepare
the judgment or order shall furnish all opposing parties with a copy of the
proposed judgment or order at least five (5) days prior to entry date.@[13]  Harris
County Fam. Ct. Loc. R. 3.8.  In this case, Janie=s attorney prepared the proposed
judgment.  David claims that he and his attorney were not provided a complete
copy of the proposed divorce decree until the hearing on the motion for entry
the divorce decree, at which time the following exchange took place:

Janie=s Counsel:        I
request the Court to order Mr. Swaab to sign the forms necessary to accompany
this Decree.  He=s refused to do so.  They are prepared, and the
information there is correct.

David=s Counsel:       Well,
I think he=ll sign the vital statistics.  We have to fill in some
spots.

You need to sign right here and right here.

David:             Some of these papers weren=t even handed to my attorney until 9:00.

The Court:                  I understand.

David:             So, it=s hard for me to sign something that doesn=t even B 

The Court:                  We understand.

David:             B my
attorney.  So, I did not refuse.

The Court:                  I didn=t think you did.  And everything an attorney says to
me representing a party, I will assume is on behalf of that party.  And I=m usually correct.

But this discussion does not relate
to when David and his attorney received a copy of the divorce decree; rather,
it refers to when David and his attorney received various forms, e.g.,
deeds, etc., to be executed per the divorce decree.[14] 
David=s attorney subsequently stated:

One other B
so, that the Court will understand why he did not want me to approve signing
the Final Decree is because he hasn=t
had a chance to study it.  And we did make some changes at my request.  A lot
of them were done, and some of them were done this morning.  We ordered an
error that was inadvertent.  And but [sic] Mr. Swaab has not had a chance to
study it, and really wanted several more days to look at it.  I=ve been over it several times.  I=ve seen these all the time.  He doesn=t.  And I can just look at a page almost and see if
there=s a word out of order.








These statements do not establish
when David and his attorney actually received the proposed judgment from Janie=s attorney.  In particular, the
statement by David=s attorney that Aa lot of [the changes to the proposed
divorce decree] were done, and some of them were done this morning,@ implies that some changes were made
before the morning of the hearing.  

Finally, David does not direct us to
any evidence, such as a facsimile copy of the proposed divorce decree or a
return receipt, establishing the actual date his attorney received the proposed
divorce decree.  In the absence of such evidence, we cannot say that the trial
court denied David a reasonable amount of time to review the proposed decree
before it entered its order.[15]  We
therefore overrule issue five. 

G.        Property
Lien

In his sixth issue, David contends
that the trial court abused its discretion in ordering a lien on the entirety
of the Fairhope Property.  Specifically, he argues that because Ruth has an
ownership interest in the property, the trial court erred by ordering an
encumbrance on the entire property.

Pursuant to the terms of the parties= Settlement Agreement, David agreed
to pay Janie $125,657, secured by a lien on the Fairhope Property.  At the
hearing, Janie=s counsel asked the trial court to order David to sign the deed with the
owelty partition and real estate lien note to effectuate the parties= property Settlement Agreement.  In
response, David=s attorney stated that he had a deed for Janie to sign as
well.  In the divorce decree, David was awarded the Fairhope Property as his
sole and separate property.  In accordance with the parties= Settlement Agreement, the trial
court also ordered the imposition of an owelty partition against the property
to secure the above-referenced payment to Janie.








David=s counsel did not object to the
imposition of the lien on the entire Fairhope Property, or otherwise bring this
complaint to the trial court=s attention.  Thus, he has not preserved this issue for
appeal.  See Tex. R. App. P. 33.1. 
We overrule David=s sixth issue.

H.        Mediation

In his seventh issue, David contends
the trial court abused its discretion by requiring mediation prior to
modification of the final divorce decree.   AIn rendering an order appointing
joint managing conservators, the court shall . . . if feasible, recommend that
the parties use an alternative dispute resolution method before requesting
enforcement or modification of the terms and conditions of the joint conservatorship
through litigation, except in an emergency.@  Tex.
Fam. Code Ann. ' 153.134(b)(5).  David asserts that the trial court exceeded
its authority, however, because rather than recommending alternative dispute
resolution prior to seeking enforcement or modification, the divorce decree
here mandates it. 

The divorce decree provides, in
pertinent part:

The parties agree that preference shall be given to carrying out the
Standard Possession Order, standard conservatorship provisions and coverage for
child support and medical insurance contained in the Final Decree of Divorce.  If
a dispute between the parties arises out of this Final Decree of Divorce, the
parties agree that before setting any hearing or initiating any discovery in a
suit for modification of the terms and conditions of conservatorship,
possession, or support of the child, except in an emergency, the parties shall
mediate the controversy in good faith.  This requirement does not apply to
actions brought to enforce the Final Decree of Divorce or to enforce any
subsequent modification of this decree.  It is agreed that the party wishing to
modify the terms and conditions of conservatorship, possession, or support of
the child shall give written notice to the other party of a desire to mediate
the controversy.  If, within ten days after receipt of the written notice,
the parties cannot agree on a mediator or the other party does not agree to
attend mediation or fails to attend a scheduled mediation of the controversy,
the party desiring modification shall be released from the obligation to
mediate and shall be free to file suit for modification.

(emphasis added).








In support of his contention that the
trial court improperly required mediation, David cites Dennis v. Smith. 
962 S.W.2d 67, 74 (Tex. App.CHouston [1st Dist.] 1997, pet. denied).  In Dennis,
the First Court of Appeals determined that a trial court lacked authority to
require mediation as a prerequisite to filing a motion to modify the
parent-child relationship.  Id.  There, the divorce decree explicitly
provided, AMediation is a prerequisite to filing a Motion to Modify.@ Id.  In addition, the divorce
decree ordered the parties to attend three mediation sessions to see if they
could resolve their differences.  Id.  Construing Texas Family Code sections
153.0071 and 153.134, the appellate court concluded that Athe legislature intended that >suits,= not >disputes= be subject to mandatory mediation.@  Id.

Here, however, rather than requiring
mediation, the divorce decree requires that the parties attempt to
mediate.  As indicated above, the clause at issue here provides that if the
parties cannot agree on a mediator, or refuse or fail to attend mediation, the
party seeking modification is free to file a modification suit.  Further, the
mediation clause contains an exception in the case of an emergency.

David has provided no argument or
authority that a trial court lacks authority to require parties to attempt
to mediate prior to filing suit.  In addition, the Legislature has required the
trial court to recommend that parties use alternative dispute resolution
methods prior to requesting enforcement or modification of a joint
conservatorship.  See Tex. Fam.
Code Ann. ' 153.134(b)(5).  Under these circumstances, we cannot say the
trial court abused its discretion by requiring the parties to attempt to
mediate.  We therefore overrule David=s seventh issue.

I.          Conservatorship








In issues eight, nine, ten, and
eleven, David contends that the trial court abused its discretion by awarding
Janie the exclusive right to (1) make all medical decisions regarding A.S., (2)
make all educational decisions regarding A.S., (3) consent to all psychiatric
and psychological treatment for A.S., and (4) establish A.S.=s primary residence.  In issue
twelve, David argues that the trial court abused its discretion by failing to
appoint him as sole managing conservator of the child.

AThe best interest of the child shall
always be the primary consideration of the court in determining the issues of
conservatorship and possession of and access to the child.@  Id. ' 153.002.  The trial court is given
wide latitude in determining the best interest of a child.  Gillespie v.
Gillespie, 644 S.W.2d 449, 451 (Tex. 1982); Turner v. Turner, 47
S.W.3d 761, 763 (Tex. App.CHouston [1st Dist.] 2001, no pet.).   Unless it would not be
in the best interest of the child,[16] the trial
court Ashall@ appoint a parent as sole managing
conservator, or both parents as joint managing conservators of the child.  Tex. Fam. Code Ann. ' 153.131(a).  








It is a rebuttable presumption that
the appointment of the parents as joint managing conservators is in the best
interest of the child. Id.  ' 153.131(b).  In rendering an order
appointing joint managing conservators, the court shall designate the
conservator who has the exclusive right to determine the primary residence of
the child.  Id. ' 153.134(b)(1).  The trial court=s order must also
allocate between the parents, independently, jointly or exclusively the
remaining rights and duties of a parent.  Id. ' 153.134(b)(4). 
The rights of a parent include the right to make decisions concerning the child=s education, and
to consent to medical and dental care as well as psychological and psychiatric
treatment.  Id. ' 151.001(a)(6) & (10).  A[T]he trial court
retains broad discretion in crafting the rights and duties of each conservator
in effectuating the best interest of the child.@  London v.
London, 94 S.W.3d 139, 150 (Tex. App.CHouston [14th
Dist.] 2002, pet. denied).  With these principles in mind, we examine David=s issues.

1.         Medical
Care

David argues that the trial court
abused its discretion in awarding Janie the exclusive right to make medical
decisions for A.S.  In support of his argument, he contends that Janie is Aunaware of the child=s true medical needs, especially in
regard to the child=s severe weight problem.@  When asked how much A.S. weighed,
Janie responded A[a]bout 100 B 150 [pounds], around there.@  But after Janie testified that A.S.
weighed approximately 100 or 150 pounds, David=s attorney asked the following
question: AIf Mr. Swaab said 162, do you think he would be exaggerating?@  Janie responded ANo.@  Janie=s approximation of her daughter=s weight at 150 pounds does not
significantly vary from David=s assessment of her weight.  Additionally, Janie participated
with A.S. in a weight class at Texas Children=s Hospital and enrolled her at Your
Body.Com.[17]  Janie also
testified that she took walks with A.S. and purchased a bicycle and trampoline
for her.  

David further argues that he has
continually tried to follow the advice of doctors whereas Janie has merely
wanted to consider their advice.  Janie, however, testified that she did not
agree with this characterization.  She clarified that she takes the advice from
A.S.=s pediatrician into consideration
when making decisions for A.S.  When asked whether it was true that, following
A.S.=s eye surgery, she only kept the tube
in A.S.=s eye for seven days instead of the
ten days allegedly required, Janie testified that she did not recall the number
of days that the tube stayed in her eye.








Janie requested that she be granted
the exclusive right to make medical decisions for A.S. because she and David
continually struggled over these matters and she wanted to protect A.S. from
being caught in the middle of their arguments.  She also testified that these
arguments were repetitive and that she and David were not able to resolve their
differences.  In her report, Dr. Gollaher noted that David possibly suffers
from Obsessive-Compulsive Disorder and Atends to overly focus on issues to
the point that the message may be lost and his approach is emotionally
draining.@  She also reported that David Aleaves no room for conversation, and
is unable (or unwilling) to listen to any feedback from another party.@    

Finally, in her
interview with Dr. Gollaher, A.S. recounted an occasion when she was sick at David=s home and he would not conclude his
telephone conversation for five minutes after A.S. tried to speak to him.  A.S.
told Dr. Gollaher that her father Adid not >take care of= her when she was ill, but that Ain contrast, her mother would have
gotten off the phone . . . .@ 

Based on the above
evidence, we conclude that the trial court did not act in an arbitrary and unreasonable manner, or
without reference to any guiding principles, in granting Janie the exclusive
right to make medical decisions regarding A.S.  The trial court had sufficient
information upon which to exercise its discretion and did not err in its
application of that
discretion.  We therefore overrule David=s eighth issue.

2.       Education

In support of his
contention that the trial court abused its discretion in granting Janie the
exclusive right to make educational decisions for A.S., David points to the
following evidence: (1) he fought to hold A.S. back a year in school when
it appeared that the child was Aon the fence@ and about to
fail; (2) he has helped A.S. master schoolwork despite her struggles;
(3) Janie has routinely relied on David to pick A.S. up from school; and
(4) despite her Asevere dyslexia,@ A.S. is making A=s on schoolwork
due to David=s daily help after school.








Regarding A.S.
being held back one year, the record reveals that, although she was initially
reluctant to have A.S. repeat a grade, Janie ultimately agreed with the
recommendation and A.S. was held back one year.  The evidence supports David=s assertion that
he has helped A.S. with her schoolwork and that she is making A=s.  But in her
interview with Dr. Gollaher, A.S. reported that David A>makes it tough= with homework
because he wants her to just practice versus her mother who just helps her with
her assignments.@ She also told Dr. Gollaher that David Asometimes helps
her >too much= with assignments
and that he is not prepared with projects.@  For example,
A.S. indicated that David has a tendency to change the focus of a school
project midway through the project.[18] 
Janie also testified that, at a parent-teacher conference that she and David
attended, A.S.=s teacher asked David to Astay away for a
month because he was causing too much tension for [A.S.],@ although David
denies that this incident occurred.

David testified
that he was willing to pay the tuition of The Shlenker School, which A.S. has
attended since she was 18 months old, so that A.S. could continue her studies
there.  Janie agreed to keep A.S. at the private school if David pays for her
tuition.  In fact, for the two years preceding the trial, Janie applied for and
received a scholarship for A.S. to attend the school, which reduced the tuition
by half.  Finally, based on her findings, Dr. Gollaher recommended that Janie retain the exclusive right to make
educational choices for A.S.

In light of this evidence, we
conclude that the trial court did not abuse its discretion in granting Janie
the exclusive right to make educational decisions for A.S.  We overrule David=s ninth issue.

3.         Psychiatric
and Psychological Treatment








In his tenth issue, David contends
that the trial court abused its discretion by awarding Janie the exclusive
right to consent to all psychiatric and psychological treatment for A.S.  David
points out that A.S. is having difficulty dealing with the divorce and has
experienced depression and significant weight gain.  He also emphasizes the
fact that he was in favor of allowing the school to hold A.S. back one year
after it was determined that she was having difficulty keeping up with her
classmates and was Aon the fence@ about to fail.

As discussed above, following her
initial reluctance, Janie subsequently agreed to allow the school to hold A.S.
back one year.  Regarding A.S.=s understandable difficulty dealing with the divorce, the
fact that she has experienced depression and weight gain does not support David=s contention that Janie should not
have been awarded the exclusive right to consent to psychiatric and
psychological treatment for A.S.

Further, Dr. Gollaher stated in her
report that David possessed symptoms consistent with Attention Deficit
Hyperactivity Disorder, including Athe reported and observed tendency to
get easily distracted to the point that he fails to complete a thought or
project, difficulty sustaining attention in conversation, poor time management,
poor organizational capacity, failure to follow through on instructions
concerning the evaluation and repeated interrupting of our conversation.@  In addition, she noted that David
possesses symptoms suggesting a mood disorder, possibly Bipolar Disorder or
Obsessive-Compulsive Disorder.  His symptoms include Ahoarding materials in the home,
repeated focusing on perceived insults and injuries to the point they have
become a center of attention . . . , rapid anger, tangential thoughts,
perseveration, and flight of ideas.@  Dr. Gollaher concluded that A[t]hese symptoms appear to markedly
impact his functioning.@

After an extensive evaluation,
including multiple interviews with David, Janie, and A.S., observing the
parties= behavior with A.S., and reviewing
questionnaires completed by both parties, Dr. Gollaher recommended to the trial
court that it grant to Janie the exclusive right to make psychological choices
for A.S. Under these circumstances, we conclude that the trial court did not
abuse its discretion in awarding Janie the exclusive right to consent to
psychiatric and psychological treatment for A.S.  We therefore overrule David=s tenth issue.

4.       Primary Residence








In his eleventh
issue, David contends that the trial court abused its discretion by appointing
Janie the joint managing conservator with the exclusive right to establish the
primary residence of A.S.  Specifically, he asserts that Janie has demonstrated
an inability to provide A.S. with necessary attention as evidenced by the fact
that Janie (1) works from 2:30 p.m. to 11:00 p.m. and has not altered her
work schedule despite Dr. Gollaher=s recommendation
that she find a different job or shift which would allow her to pick A.S. up
from school, thereby easing the transition between households; (2) relies
on David to care for A.S. from the time she leaves school at 4:30 p.m. until
Janie returns home at 11:00 p.m.; (3) proposed using a babysitter whose
name she could not remember nor did she know where the babysitter lived.

Following her
separation from David, Janie worked as a radiologist from 8:00 to 5:00 p.m., or
8:30 a.m. to 5:30 p.m.  Due to staffing issues, Janie was required to work
night shifts from 2:30 p.m. to 11:00 p.m. for approximately seven months prior
to the trial.  During this period, David agreed to help out by caring for A.S.
from the time she finished school at 4:30 p.m. until Janie finished work at
11:00 p.m.  However, Janie testified that she expected to return to day shifts
working from 10:30 a.m. to 6:30 p.m. in May 2006 (the month of trial).  At that
time, she would arrange for a babysitter to care for A.S. until she finished
her workday.  Although at trial she could not recall the name of the
babysitter, Janie testified that she had the woman=s information and
that she had been highly recommended to her by several parents whose children
also attend The Shlenker School.

The record also
reflects that Janie moved from an apartment to a house with a backyard so that
A.S. could have a place to play on her trampoline.  Janie further testified
that she intended to reside in Harris County and had no objection to such a
geographical restriction.  In addition, a number of photographs of David=s home were
presented at trial, depicting mounds of newspapers and magazines stacked
throughout the house, which David conceded showed a Amessy@ area Afull of clutter.@  Finally, Dr.
Gollaher recommended that Janie be awarded the exclusive right to establish
A.S.=s primary
residence in her report to the trial court.  








Considering all
the evidence, we conclude that the trial court did not abuse its discretion in
appointing Janie as the joint conservator with the exclusive right to establish
A.S.=s primary
residence.  Accordingly, we overrule issue eleven.

5.       Sole Managing Conservatorship

In his twelfth and
final issue, David contends the trial court abused its discretion by failing to
appoint him as sole managing conservator of A.S.  However, a review of the
record reveals no evidence whatsoever that David actually made such a request. 
To the contrary, he requested on several occasions that he and Janie be
appointed joint managing conservators.  For example, in his Proposed Parenting
Plan, David stated as follows: AIt is requested that Janie Guerra Swaab
and David Lawrence Swaab are appointed Joint Managing Conservators of [A.S.]@  At trial, when
asked about the issue of conservatorship, David testified that he was
requesting that he and Janie be appointed joint managing conservators. 
Finally, at the hearing for entry of the divorce decree, David did not object
or otherwise complain about the appointment of a joint managing conservatorship
in the divorce decree.  Thus, David has waived this issue on appeal, and it is
overruled.  See Tex. R. App.
P.  33.1.

IV. 
CONCLUSION








In sum, David has not established
that the trial court abused its discretion in determining the issues presented
regarding child support and conservatorship.  We have also concluded that the
trial court did not err by ordering David to repay the loans owed to his
mother, Ruth.  Further, David=s complaints regarding the division of the marital estate are
without merit because the parties settled this issue by entering into a Rule 11
Settlement Agreement, which David did not repudiate before judgment was
rendered.  In addition, David did not preserve his complaints regarding income
tax liability, the owelty lien on the Fairhope Property, and sole managing
conservatorship.  Finally, we conclude that David failed to show that the trial
court abused its discretion regarding the amount of time it permitted for
review of the proposed divorce decree and by requiring the parties to attempt
mediation prior to modification of the divorce decree.  Having overruled each
of David=s issues, we affirm the judgment of
the trial court.

 

 

 

/s/        Eva M. Guzman

Justice            

 

 

Judgment rendered and Opinion filed
April 24, 2008.

Panel consists of Justices Yates,
Fowler, and Guzman.









[1]  To protect the privacy of the child, we identify her
by her initials.  See Tex. Fam.
Code Ann. ' 109.002(d) (Vernon 2002).





[2]  See Tex.
R. Civ. P. 11.





[3]  Of this amount, $100,000 represented the property
awarded to Janie and the remaining $25,657 represented Janie=s attorneys=
fees.





[4]  At the time of trial, A.S. was nine years old and
weighed approximately 160 pounds.





[5]  In his amended inventory and appraisements, David
reports a community liability of $9,000 from the previous tax year.





[6]  In other words, although it is clear that David
notified the trial court of his belief that it had used the wrong formula in
computing the child support award, he did not ask the trial court to, in the
parlance of math teachers everywhere, Ashow
its work.@





[7]  The record does not contain a tax return for tax
year 2003.  





[8]  In his Post-Submission Brief, David cites In re
Marriage of Grossnickle as support for his argument that the trial court
was not entitled to consider evidence of his resources that dated back more
than three years.  115 S.W.3d 238 (Tex. App.CTexarkana
2003, no pet.).  In Grossnickle, a father and mother appealed the trial
court=s order modifying the award of child support.  Id. at
242.  In deciding whether to increase the original award, the trial court
considered, among other things, the father=s
tax returns from 1998 to 2000 (the most recent available at the time of the
hearing) to determine his net income.  Id. at 247.  In a footnote, the
appeals court noted that it disregarded evidence of the father=s income dating back to the divorce as Anot relevant to this determination, which is
necessarily based on the assets at the present time rather than real or
imagined assets that may have existed in 1996 or 1997, save only as it might
relate to a loss or increase in value at the present time.@  Id. at 248 n.6.  

David=s
reliance on Grossnickle is misplaced.  That case involved an appeal from
a modification of child support, not from an original child support
award, as in this case.  Thus, the court compared the financial circumstances
of the affected parties at the time the support order was entered with their
circumstances at the time modification was sought.  Id. at 245.  And
although the Grossnickle court determined that such evidence was Anot relevant to this determination,@ it in no way suggested that consideration of tax
returns dating back more than three years is generally inappropriate,
especially in making an original support determination. 





[9]  Moreover, David testified that his income largely
depends on the profitability of the portfolios he manages.  According to David,
he has recently begun managing the portfolio of a new client and has Adone nicely@
for this client, who has started sending him new business.  





[10]  In a post-submission brief, David contends that the
trial court was not authorized to order him to pay private school tuition for
A.S.  But other than a brief reference to this issue in the summary of argument
section, David has not set forth any specific argument and analysis with
supporting authorities and record citations related to this issue in his
brief.  See Chapman v. Olbrich,  217 S.W.3d 482, 501 (Tex. App.CHouston [14th Dist.] 2006, no pet.); San Saba
Energy, L.P. v. Crawford, 171 S.W.3d 323, 338 (Tex. App.CHouston [14th Dist.] 2005, no pet.) (holding that,
although courts interpret briefing requirements reasonably and liberally,
parties asserting error on appeal still must put forth some specific argument
and analysis citing the record and authorities in support of the parties= argument).  An issue raised for the first time in an appellate
reply brief will not be considered on appeal.  See Tex. R. App. P. 38.3 (AThe appellant may file a reply brief addressing any
matter in the appellee=s brief.@); Crowder
v. Scheirman, 186 S.W.3d 116, 121 (Tex. App.CHouston [1st Dist.] 2005, no pet.).  Thus, David has waived this issue.





[11]  As noted above, David reported a $9,000 tax
obligation as a community liability.





[12]  In fact, Ruth testified that there were no written
agreements regarding any Aloans@ made to David
and Janie over the course of their marriage.  Several of the checks she gave to
David or paid to others on his behalf that were entered into evidence included
a notation that they were Aloans.@  But Ruth stated she considered this money loaned to
David because she planned to offset his inheritance by this amount; she
admitted that there were no official documents nor was there any time frame for
repayment of any of these amounts.  Finally, she testified that she could not
say whether Janie knew about the money she had provided to David over the
years, although she assumed David had made Janie aware of her support.





[13]  Janie argues that David has waived this issue on
appeal because he did not object at the hearing that she failed to comply with
the local rule.  We disagree.  The record reflects that David=s attorney informed the court that his client did not
want to approve the decree because he had not had a chance to study it, and
that he wanted several more days to review it.  We conclude that this request
was sufficient to preserve David=s
complaint for appeal.  See Tex.
R. App. P.  33.1 (to preserve complaint for appellate review, party must
make timely request, objection, or motion stating grounds with sufficient
specificity to make trial court aware of complaint). 





[14]  According to Local Rule 3.8, A[a]ll forms required by governmental entities shall be
submitted at the time the judgment or order is submitted.@  Harris County Fam. Ct. Loc. R. 3.8. 





[15]  Indeed, David=s
attorney articulated objections to some of the terms of the divorce decree. 
For example, David=s attorney stated that David was entitled to a
standard extended possession order, which was not reflected in the proposed
divorce decree.  In response, the trial court changed the divorce decree to
reflect the standard extended possession.  





[16]  In determining whether it is in the best interest of
the child to appoint the parents as joint managing conservators, a court
considers the following factors:

(1)        whether the physical, psychological, or
emotional needs and development of the child will benefit from the appointment
of joint managing conservators;

 (2)       the ability of the parents to give first
priority to the welfare of the child and reach shared decisions in the child=s best interest; 

(3)        whether each parent can encourage and
accept a positive relationship between the child and the other parent; 

(4)        whether both parents participated in child
rearing before the filing of the suit; 

(5)        the geographical proximity of the parents= residences; 

(6)        if the child is 12 years of age or older,
the child=s preference, if any, regarding the person to have the
exclusive right to designate the primary residence of the child; and 

(7)        any other relevant factor.  

Tex. Fam. Code Ann. ' 153.134(a).





[17]  This website provides a free exercise risk
assessment by the Aerobics and Fitness Association of America and a fitness
professional locator service.  See http://www.yourbody.com.





[18]  A.S. described a specific occasion when David
changed the topic of her science project, causing her to miss the deadline for
a competition.  David also kept A.S. home from school to work on the project
rather than allowing her to do the work on the weekend.