# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-22-00631-CV

**Brett Clark, Appellant**

**v.**

**Heidi L. Binder, Appellee**

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-18-003400, THE HONORABLE MARIA CANTÚ HEXSEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Brett Clark appeals the trial court's order denying in part his motion to modify the parent-child relationship with his child with Heidi Binder. Clark contends that the trial court abused its discretion by finding that he was intentionally underemployed and that his child's best interest was served by applying the support guidelines to Clark's earning potential instead of his actual income. We will affirm the order.

## BACKGROUND

Clark registered a 2011 child-support order from New York concerning his child, born in 2009, and filed a motion to modify the parent-child relationship. Binder responded with a motion to enforce the child-support order. The New York order required Clark to pay Binder $1,437.44 monthly in child support and $107.03 monthly in medical support. Clark asked the court to reduce his monthly support obligation to $377 based on his $2,166 monthly income,

backdated to 2018 when he filed his petition to reduce his arrearages. Binder asked the court to find him in contempt for his failures to pay support and the arrearages that reached $84,421 for unpaid child support and $8,514 for medical support as of February 11, 2022.

After a hearing, the trial court rendered an order that appointed the parties joint managing conservators of the child with Binder having the right to designate the child's primary residence. The order defined the parties' rights and set a possession schedule. In a separate order, the trial court confirmed arrearages of $85,858.87 in child support and $8,621.66 in medical support, less offsets totaling $5,132.60, leaving a total arrearage of $89,347.93. The court also awarded Binder $14,182 in attorney's fees and costs. Those provisions are not challenged.

The trial court found that Clark's actual income is significantly less than he could earn because of intentional unemployment or underemployment and that applying the support guidelines to Clark's earning potential was in the child's best interest. The court found that Clark received numerous gifts and benefits from others including housing, utilities, travel expenses, and vacation accommodations. The court found that Clark's earning potential was $8,921.33 monthly based on his average earnings as a sales professional[1] in 2015-2017, the three tax years before he filed his motion to modify. The court found that Clark's net monthly resources were $6,803.27, Binder's net monthly resources were $4,386.45, that the percentage applied to Clark's net resources for child support was 20%, and that the amount of monthly child support was within the percentage guidelines of Texas Family Code Section 154.125. Applying the Family Code guidelines, the trial court reduced Clark's support obligations to Binder to

---

[1] Clark testified that he sold new homes for a builder. He changed jobs after being moved to a less lucrative subdivision.

2

$1,360.65 in monthly child support. *See* Tex. Fam. Code § 154.0655. The trial court found that Binder was providing insurance (through her husband's job) and that Clark must pay medical support of $67.17 monthly.

Clark contends on appeal that the trial court abused its discretion by finding that "the actual income of Mr. Clark is significantly less than what he could earn because of intentional underemployment or underemployment, and it is in the best interest of the child to apply the support guidelines to the earning potential of Mr. Clark."

## APPLICABLE LAW

Parents have a legal duty to support their minor child. *Iliff v. Iliff*, 339 S.W.3d 74, 81 (Tex. 2011). A parent who is qualified to obtain gainful employment cannot shirk his or her child support obligation by voluntarily remaining unemployed or underemployed, though courts must consider a parent's right to pursue his or her own happiness along with the duty to support the child. *Id.* at 81-82. Texas Family Code section 154.066 provides that "[i]f the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor." *Id.* at 78. Intentional unemployment or underemployment means that an obligor consciously chooses to remain unemployed or underemployed. *Id.* at 80.

A trial court has discretion to set child support within the parameters provided by the Texas Family Code. *Iliff*, 339 S.W.3d at 78; *see also* Tex. Fam. Code §§ 154.121–.123. The trial court's consideration of the child support guidelines in a modification proceeding is discretionary, not mandatory. Tex. Fam. Code § 156.402(a); *In re K.A.M.S.*, 583 S.W.3d 335, 346 (Tex. App.—Houston [14th Dist.] 2019, no pet.). The court must engage in a case-by-case

3

determination to decide whether child support should be set based on earning potential as opposed to actual earnings. *Iliff*, 339 S.W.3d at 82. Where an obligor's income fluctuates, a trial court may average such income for purposes of calculating child support obligations. *Swaab v. Swaab*, 282 S.W.3d 519, 526 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd w.o.j.) (averaging gross income shown on several tax returns to determine average gross income); *Norris v. Norris*, 56 S.W.3d 333, 341–42 (Tex. App.—El Paso 2001, no pet.) (averaging gross income for two-year period in determining child support was not abuse of discretion given fluctuation in obligor's income). In addition, the best interest of the child should be the trial court's primary consideration in deciding whether to modify a child support obligation. *See* Tex. Fam. Code. § 156.402(a); *In re K.A.M.S.*, 583 S.W.3d at 346.

In an action to set the amount of child support, after the obligor offers proof of his or her current wages, the obligee bears the burden of demonstrating that the obligor is intentionally unemployed or underemployed. The burden then shifts to the obligor, if necessary, to offer evidence in rebuttal. *Iliff,* 339 S.W.3d at 82. A party's intent is generally not susceptible to direct proof and must be proven by circumstantial evidence. *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434-35 (Tex. 1986) (holding intent to defraud not generally susceptible to direct proof). The trial court, as fact finder, is the sole judge of the witnesses' credibility and the weight to be given their testimony and is free to resolve any inconsistencies. *Iliff*, 339 S.W.3d at 83. A factfinder may make reasonable inferences and conclusions from the direct and circumstantial evidence presented at trial. *Hammond v. Hammond*, 898 S.W.2d 406, 410 (Tex. App.—Fort Worth 1995, no writ) (discussing review standards in child-support modification hearing).

4

A court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *see also Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex. 1993). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles. *See Worford*, 801 S.W.2d at 109; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court also abuses its discretion by failing to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

In applying the abuse-of-discretion standard to a modification suit, the sufficiency of the evidence is not an independent ground for error; it is simply a factor in assessing whether the trial court abused its discretion. *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—2014, no pet.); *London v. London*, 192 S.W.3d 6, 14-15 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Thus, we engage in a two-pronged inquiry, asking (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Gonzalez v. Tippit*, 167 S.W.3d 536, 544 (Tex. App.—Austin 2005, no pet.). A traditional sufficiency review is incorporated into the first prong of this hybrid appellate review. *Gonzalez*, 167 S.W.3d at 544. Clark insists that there is "no evidence" that he was intentionally underemployed.

A legal-sufficiency challenge like that presented here will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Service Corp. Int'l. v. Guerra*, 348 S.W.3d 221, 228

5

(Tex. 2011). Evidence is more than a scintilla if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Mtr. Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). If, however, the evidence does no more than create a mere surmise or suspicion and is so slight as to necessarily make any inference a guess, then it is no evidence. *Id.*

## DISCUSSION

Clark argues that, though he was earning less than he had earned when the New York court calculated his child-support obligation, the record contained no evidence that he was intentionally earning less money. Instead, he argues that the only evidence is that he had sought other employment to no avail. Clark, Binder, and process server Kevin Blandford testified on the merits at the March 7, 2022 hearing on the motion to modify.

### A.    Testimony and evidence

The New York order states that Clark has sufficient means to pay $871.49 monthly for child support plus $565.95 monthly for additional expenses for child care for a total of $1,437.44 monthly. The order also requires Clark to pay $107.03 monthly for health insurance. Clark testified that the New York court incorrectly included all of the income from his business and called it his personal income, but did not subtract expenses like nearly $2,000 in rent and employee pay.

Clark testified that he moved to Texas in 2011 to be near his son because Binder moved home to Texas after they split; he tried going back and forth for a year, but it was not affordable. Clark testified that he had been in the boat business his whole life and did not know what to do when he moved to the middle of Texas. His higher 2014 and 2015 income was from selling houses for a home builder. He said that income depends on the location and the

6

economy; he had a couple of good years, then got moved to a new location that did not do well. Clark testified that he had applied for a lot of jobs. He had applied to almost every home building company in the area, but a lot of them want college educations and deny promotions absent a college degree. Clark testified that he has a GED. He decided to get back into the boat business and started a company repairing boats that was starting to do fairly well until the COVID pandemic began. He estimated he made $500 to $700 per week from the boat business.

Clark introduced his tax returns that showed the following wages, salaries and tips for most of the decade leading up to the hearing:

| | |
|------|-----------|
| 2013 | $ 19,235 |
| 2014 | $ 93,152 |
| 2015 | $ 155,314 |
| 2016 | $ 107,375 |
| 2017 | $ 45,514 |
| 2018 | $ 6,602 |
| 2019 | $ 11,762 |
| 2020 | $ 10,947 |

He originally reported $120,338 in adjusted gross income (AGI) in 2016 income reduced by deductions and exemptions to $85,248 in taxable income, but he amended his return to reduce his AGI to $107,375 and increase the deductions and exemptions such that he had taxable income of $20,945. Clark testified that his 2017 income was "$45,000" which did not include a taxable amount of $6,373 in a pension or annuity or a reported reduction by $25,001 in business losses. Clark testified that his 2018 income was "around $20,000," which was his wage and salary income that was then reduced on his tax return by $13,259 in business losses. He admitted on cross-examination that some of these returns were filed only after the filing of this lawsuit. Clark introduced earning statements from 2017 and 2018 from various employers

7

including Aardvark Building Services, LGI Homes, New Team, Team Enterprises, Uber, and Nauti Boatworks. Clark also introduced his savings account statements that showed a constant balance of $1.09 in his savings account and a checking account that had a maximum credit of just over $6,000 in one month from February 2019 through November 2021. In his proposed support order, he estimated his monthly gross income of $2,166.67 and monthly personal expenses of $1,676.60, leaving him a net of $490.07 before child support.

On cross-examination, Clark testified that his company, of which he was the sole proprietor and employee, was called Nauti Boatworks ATX. He said he did not own a charter business, but his company did work for a charter company called Nauti ATX which was owned by his girlfriend of eight years. He said she runs everything about Nauti ATX except that he maintains and takes care of the boats. He admitted that the charter business's LinkedIn page lists him as the manager of the charter business; he clarified that he manages the boats. He also conceded that the charter business's website had listed his phone number as the contact for charters, but that the site had changed after a previous hearing to list his girlfriend's phone number.

Clark testified that he lived with his girlfriend in the home she had owned for over three years. He testified that he does not give her a dime for the house (purchase or rent), did not pay utilities, and contributed no money for maintenance or any purpose. He often drives her truck because she drives his vehicle for work and it gets better gas mileage.

Clark testified that he had sold gutters for a while and had applied to sell boats and insurance; he had not taken the test to sell insurance because it takes time and costs money. He had considered getting a real-estate license but cannot afford it. He said that since

COVID-19 hit and the real-estate market had gone up, nobody was hiring. He had not reapproached any of the homebuilders who had turned him down previously.

Clark testified that, in the month before the March 2022 hearing, he went to Vail, Colorado, snowboarding for two weeks. His girlfriend bought him a season pass and friends paid for his housing, so he had to pay for just his food. He was planning to return the week after the hearing for six days. He had been to the Virgin Islands two or three times in the preceding year; his mother lives there parttime and paid for some of the trips. He had been to Maine once in the previous year and said that his family paid for his travel.

Clark testified that he had tried to get the support order modified shortly after moving to Texas in 2011 or 2012 but that his request was denied. He said that Binder told him that she did not show up at a hearing because an attorney had told her that, because he did not have an attorney, if she did not appear the court would not take any action. He said he tried to get Binder to agree to modify the award to eliminate the insurance payment when he was paying for insurance in 2014-15 and they thought they had done so, but the attorney general continued collecting the insurance portion.

Clark said he had no idea whether process servers were knocking on his home's door looking for his girlfriend and that, if they were looking for her, they were not talking to him.

Process server Blandford testified that he had served the original motion for enforcement of child support on Clark on August 31, 2021. Blandford testified that he had talked with Clark subsequently when he tried to serve Clark's girlfriend with a subpoena to appear at a hearing. He spoke with him through a doorbell camera on November 19, 2021, leaving a business card, and then face-to-face on November 23, 2021. He returned on

9

November 29 and saw vehicles in the driveway and heard sounds of occupation, but nobody responded to his knocks on the door and ringing the doorbell.

Binder introduced evidence that Clark's arrearages began accruing in Texas in July 2012 and had mounted to $87,169.24 by July 2021. She testified that Clark's failure to stay current on his child support had been hard on her and their son. She had incurred a lot of debt. She testified that, in addition to his child-support arrearages, Clark had not paid the $12,000 attorney's fees award from the New York litigation.

Binder testified that Clark appears to spend more money than the income his tax returns indicate he would have. She testified that at a previous hearing to enforce child-support involving the Office of the Attorney General, Clark announced he had filed for bankruptcy and laughed and smirked over the Zoom when the hearing had to be suspended. She testified that he told her he would quit his 2015 home-selling job so she would suffer. She testified that he had missed visitation to go on his vacations. She mentioned his threats to quit his job in a 2018 email and questioned how he could not work and yet afford a family lawyer and a bankruptcy lawyer (whom she indicated he was attempting to sue). She testified that she had been asking since 2018 for essentially the visitation schedule he agreed to on the Friday before the Monday hearing that led to the order under review. She noted that, during his higher-income years, Clark did not make any payments on the arrearages.

Binder testified that, when she co-owned a business with Clark, he frequently conducted cash transactions, but Clark said that most people use credit cards these days.

10

**B.      Analysis**

Clark contends that the trial court abused its discretion by finding that his actual income is significantly less than what he could earn because of intentional underemployment or unemployment and that it is in the best interests of the child to apply the support guidelines to his earning potential.  He contends that no evidence supported the finding that he could obtain the type of employment that could earn him the income he enjoyed previously.  He points to his testimony that he had sought other employment including sales jobs.  He admits that he made the income reported but contends that his evidence that he was not able to obtain that type of employment was unrefuted.

We conclude that the record contains sufficient evidence to support the trial court's finding that Clark was intentionally underemployed or unemployed.  Clark testified that his options were limited by his lack of a college degree, that the economy and his work assignment controlled his income, and that he had applied to several places.  But the court could have concluded that the list of rejected applications he recited was not long for a multi-year search.  He did not spend the time and money to take a test that would have enabled him to sell insurance.  Binder testified that Clark threatened to quit his job in 2015 to make her suffer and again in 2018.  He reported income of $6,602 in 2018, $11,762 in 2019, and $10,947 in 2020; though 2020 was affected by the onset of the COVID-19 pandemic, it is not the lowest of those years.[2]  Further, the court could reasonably conclude that Clark's job search was less exhaustive

---

[2]  We note that, at the minimum wage of $7.25, Clark would have earned those amounts in 911 hours of work in 2018, 1,623 hours in 2019, and 1,510 hours in 2020.  *See* Tex. Fam. Code § 154.068(a) ("In the absence of evidence of a party's resources, as defined by Section 154.062(b), the court shall presume that the party has income equal to the federal minimum wage for a 40-hour week to which the support guidelines may be applied."); Tex. Labor Code § 62.051 (providing with exceptions, employer shall pay employees the federal minimum wage); *see also*

11

than consistent with a person doing his best to gain employment—particularly in light of his travel itinerary. The record contains more than a scintilla of evidence (and factually sufficient evidence) to support the finding that Clark is intentionally underemployed. Because the record supports the trial court's finding that Clark earned significantly less than what he could earn because of his intentional underemployment, the trial court did not abuse its discretion by applying the support guidelines to his earning potential. *See Iliff*, 339 S.W.3d at 78; *see also* Tex. Fam. Code § 154.066(a). The court did not abuse its discretion by using Clark's earning history to assess Clark's resources. *See* Tex. Fam. Code § 154.0655(c)(1)(D). The court used these calculations to reduce Clark's child-support obligation, albeit by substantially less than Clark requested.

We further conclude that the trial court had more than sufficient evidence to support its finding that applying the guidelines to compute Clark's obligation in the amount assessed was in the child's best interest. Binder testified that Clark's child-support arrearages inflicted hardships on her and their child. The trial court reduced Clark's obligation and set it based on a level of income he had proved he could earn, though higher than Clark requested. There is no competing evidence that the child's best interest would be served by a lower child-support payment. The trial court did not abuse its discretion by concluding that its child-support order was in the child's best interest.

Because Clark has failed to show that no evidence supports the trial court's findings or that the trial court clearly abused its discretion, we overrule his issue on appeal.

---

29 U.S.C. § 206 (setting minimum wage at $7.25 per hour). A person working 40 hours per week for 50 of the 52 weeks in a year would work 2,000 hours.

**CONCLUSION**

Having overruled Clark's issue on appeal, we affirm the judgment.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Kelly and Theofanis

Affirmed

Filed:   June 7, 2024